DECISION
{¶ 1} Relator, General Electric Company ("GE"), filed this original action requesting that this court issue a writ of mandamus ordering respondent, Industrial Commission of Ohio ("commission"), to vacate any orders issued by the commission *Page 2 
addressing the merits of the claim submitted by respondent, Bina McCary ("claimant"), after the commission's July 15, 2003 order and ordering the commission to abstain from addressing claimant's March 8, 2005 submission of additional information and request for hearing of her claim.
 {¶ 2} This court referred this matter to a magistrate pursuant to Civ.R. 53(C) and Loc.R. 12(M) of the Tenth District Court of Appeals. The magistrate issued a decision, including findings of fact and conclusions of law, recommending that this court deny the requested writ. (Attached as Appendix A.)
 {¶ 3} To summarize, on February 7, 2003, claimant filed a First Report of an Injury, Occupational Disease or Death ("FROI-1"), in which she alleged that she had contracted asbestosis as a result of exposure to asbestos during her employment with GE. On July 15, 2003, a district hearing officer ("DHO") issued an order entitled "EX PARTE ORDER." As detailed in the magistrate's decision, the DHO found that claimant's FROI-1 application did not comply with the commission's policy concerning the medical evidence a claimant must submit with a claim for an asbestos-related disease, "Resolution R03-1-02." The order twice stated that the FROI-1 application was, as a result, "dismissed." The order also stated that it was "interlocutory in nature and not subject to appeal" pursuant to Ohio Adm. Code 4121-3-09.
 {¶ 4} Nevertheless, claimant appealed. The common pleas court ultimately dismissed the appeal, finding that the commission had not yet adjudicated claimant's right to participate in the workers' compensation fund.
 {¶ 5} Immediately thereafter, on March 8, 2005, claimant's counsel sent a letter to the Ohio Bureau of Workers' Compensation ("bureau"). The letter stated that *Page 3 
claimant's claim had been "dismissed without prejudice" in July 2003 for failure to attach the appropriate medical evidence. It also stated: "All such documents would have been submitted to the [commission] had the matter been scheduled for a hearing before a [DHO]." Claimant's counsel enclosed "all medical records in compliance with Resolution R03-1-02" and asked the bureau to "immediately reactivate [claimant's] claim so that it may properly be set before a Hearing Officer."
 {¶ 6} The bureau thereafter acknowledged receipt of claimant's application and referred her to Kenneth Kretchmer, M.D. In his July 1, 2005 report, Dr. Kretchmer concluded that claimant had not contracted asbestosis. On July 13, 2005, the bureau referred claimant's claim to the commission for adjudication.
 {¶ 7} Following a hearing on August 26, 2005, the DHO denied claimant's claim. The DHO also rejected relator's argument that the commission lacked jurisdiction to consider the claim based on the trial court's dismissal of claimant's appeal. Claimant appealed the DHO order; relator did not appeal.
 {¶ 8} Following a hearing on November 9, 2005, a staff hearing officer ("SHO") affirmed the DHO's denial of claimant's claim. The SHO's order contains no discussion of jurisdiction.
 {¶ 9} Relator filed this action in mandamus requesting an order directing the commission to deny claimant's request to reactivate her claim and to vacate the commission's orders that followed reactivation. In support, relator argued that the commission lacked jurisdiction to adjudicate claimant's claim because no such claim existed once the DHO dismissed claimant's application in July 2003. *Page 4 
 {¶ 10} As noted, the magistrate recommended denial of the requested writ. The magistrate concluded that the commission had broad authority to adjudicate claims and acted within that authority in this matter. The magistrate also concluded that relator had waived its jurisdictional argument by failing to appeal the DHO's August 2005 order.
 {¶ 11} Relator filed objections to the magistrate's decision, as follows:
 A. The Magistrate's Decision is in Error Because it is Based Upon an Incorrect Understanding and Application of the Facts Concerning the Procedural History of the Claim Filed by [Claimant].
 B. The Magistrate's Decision is in Error Because it Reflects a Misunderstanding of the Arguments Presented by General Electric Regarding the [Commission's] Order Dismissing the Claim Filed by [Claimant].
 C. The Magistrate Erred in Failing to Recognize that Objections to Subject Matter Jurisdiction Cannot be Waived Under Ohio Law.
 {¶ 12} First, we reject relator's first objection, in which relator argues that the magistrate's decision reflects a misunderstanding of the procedural history of claimant's claim. While the magistrate's decision refers to claimant's "first" and "second" FROI-1 applications, the magistrate clearly understood the procedural history and the manner in which claimant's application reached adjudication.
 {¶ 13} Next, we address relator's second and third objections, which concern relator's jurisdictional arguments. As noted, the magistrate concluded that relator had waived any argument based on subject-matter jurisdiction. Relator argues here that subject-matter jurisdiction cannot be waived and that it may raise the argument at any time. We agree with relator. *Page 5 
 {¶ 14} The magistrate and respondents rely upon State ex rel. QuartoMining Co. v. Foreman, 79 Ohio St.3d 78, 1997-Ohio-71. In that case, the Ohio Supreme Court applied to workers' compensation appeals the well-established principle that reviewing courts ordinarily do not consider questions not presented to the lower court. The court found that this principle applied with particular force to the case before it, where "the employer sat idly by at each successive hearing, allowing the commission each time to determine the extent of [the claimant's] disability" on grounds different from the grounds offered for the first time in a complaint in mandamus to the court of appeals. QuartoMining did not, however, deal with a question of jurisdiction.
 {¶ 15} In workers' compensation appeals where jurisdiction is in question, the Ohio Supreme Court has applied the well-established principle that subject-matter jurisdiction may be raised at any time. See, e.g., State ex rel. Bond v. Velotta Co., 91 Ohio St.3d 418, 419,2001-Ohio-91 (claimant's failure to appeal appellate court's dismissal of mandamus complaint on jurisdictional grounds was "not an impediment to our consideration, however, since subject matter jurisdiction cannot be waived and may be raised by us sua sponte"); State ex rel. SugardaleFoods, Inc. v. Indus. Comm., 90 Ohio St.3d 383, 386, 2000-Ohio-185
(addressing employer's jurisdictional argument made first on appeal "because it attacks the commission's subject matter jurisdiction, and subject matter jurisdiction cannot be waived"). Based on this precedent, we conclude that relator did not waive its subject-matter jurisdiction argument by not appealing the August 2005 DHO order.
 {¶ 16} In this respect, we acknowledge that, in some circumstances, where principles of waiver do not preclude an argument concerning subject-matter jurisdiction, *Page 6 
principles of res judicata can. Superior's Brand v. Lindley (1980),62 Ohio St.2d 133; Jackson v. St. Anthony Hosp. (Mar. 21, 1985), Franklin App. No. 84AP-690, (acknowledging that employer could raise subject-matter jurisdiction arguments concerning commission orders, but concluding that collateral estoppel precluded employer from further challenging jurisdictional issue that was fully litigated but not appealed). Res judicata will only apply, however, where the issue was specifically decided in the prior proceeding. State ex rel. Kroger Co.v. Indus. Comm., 80 Ohio St.3d 649, 651, 1998-Ohio-174. Here, the commission argues that relator did not even raise the jurisdictional question at issue. And, while the August 2005 order addressed relator's argument concerning "jurisdiction," the order makes no reference to the jurisdictional question before us, i.e., whether the July 2003 order precluded subject-matter jurisdiction. Thus, we cannot conclude that the question of subject-matter jurisdiction was fully litigated before the commission. For these reasons, we sustain relator's third objection.
 {¶ 17} We find, however, that this does not end our inquiry. As relator's second objection indicates, the magistrate interpreted relator's arguments regarding the commission's actions in this matter as grounded in alleged procedural errors, and with good reason. In its complaint, relator asserted that the commission lacked jurisdiction over claimant's application because it had been dismissed in the DHO's July 2003 "ex parte order." In relator's view, claimant's only option at that point was to file a new application. We disagree.
 {¶ 18} First, relator analogizes the DHO's July 2003 order to a voluntary dismissal under Civ.R. 41(A), which the Ohio Supreme Court has held renders the *Page 7 
dismissed parties as if no suit had ever been filed. Denham v. NewCarlisle, 86 Ohio St.3d 594, 1999-Ohio-128. We do not find this analogy helpful here. The DHO's dismissal of claimant's application was by no means voluntary. And, while claimant's counsel and relator have described the DHO's order as a dismissal without prejudice, the intent of the DHO's order is simply unclear.
 {¶ 19} Before the magistrate, the commission argued that the DHO's "order unfortunately misused the word `dismiss' when the intent was to suspend processing the claim (an administrative correlate to a stay of proceedings)." The bureau apparently interpreted the DHO's order similarly. The March 22, April 11, and April 29, 2005 mailings stated that the bureau had "recently received" claimant's application and scheduled claimant for a medical examination. Once the examination was complete, the bureau referred the claim to the commission "per the order/letter dated 03/09/2005 [that is, claimant's letter] for continued processing." Thus, the bureau's actions indicate that it interpreted the DHO's order as one of suspension, not dismissal.
 {¶ 20} As to the bureau's actions and interpretations, QuartoMining now comes into play. As claimant points out, relator had numerous opportunities to object to the bureau's "continued processing" of claimant's claim. Relator could have objected to scheduling claimant for an examination or to referring the claim to the commission for adjudication; relator did not object. And perhaps more importantly, relator did not name the bureau as a respondent in this action, did not allege claims against the bureau, and sought relief only as against the commission. While it was the bureau that reactivated claimant's claim, relator seeks an order from this court directing the commission to deny claimant's request to reactivate the claim. Thus, based on QuartoMining and the *Page 8 
limitations of relator's complaint, the question whether the bureau appropriately interpreted the DHO's order as one of suspension, rather than dismissal, is not before us.
 {¶ 21} Instead, the only question before us is whether the commission has authority to adjudicate a claimant's FROI-1 application where the commission purported to dismiss, rather than suspend, the application for failure to comply with Resolution R03-1-02 and, two years later, the bureau allowed the claimant to reactivate her initial application, rather than file a new application. Relator presents this question as one of subject-matter jurisdiction, an issue we have determined is properly raised here.
 {¶ 22} Subject-matter jurisdiction is the power conferred on a court or adjudicative body to decide a particular matter on its merits and render an enforceable judgment over the action. Morrison v. Steiner
(1972), 32 Ohio St.2d 86, paragraph one of the syllabus. Ohio law grants to the commission and its hearing officers the jurisdiction to adjudicate contested workers' compensation claims. See R.C. 4121.34;4121.35; 4123.511(C), (D), and (E). In order to exercise that jurisdiction, however, the commission must adhere to statutory requirements. Budget Comm. of Brown Cty. v. Village of Georgetown
(1986), 24 Ohio St.3d 33, 36, citing Painesville v. Lake Cty. BudgetComm. (1978), 56 Ohio St.2d 282, 284; Summit Cty. Bd. of Health v.Pearson, Summit App. No. 22194, 2005-Ohio-2964, at ¶ 6.
 {¶ 23} In bringing its jurisdictional argument before this court, relator cites to no statutory requirements that limit the commission's authority to adjudicate a claim that the bureau reactivated after a two-year delay. To the contrary, as the magistrate found, R.C. 4123.10
grants broad authority to the commission to "make an investigation in *Page 9 
such manner as in its judgment is best calculated to ascertain the substantial rights of the parties and to carry out justly the spirit of such sections." That section expressly excludes the commission from "the usual common law or statutory rules of evidence or by any technical or formal rules of procedure," except for those specifically identified. R.C. 4123.10.
 {¶ 24} To be sure, the commission has no jurisdiction to adjudicate a claim for occupational disease benefits filed beyond the two-year statute of limitations imposed by R.C. 4123.85. See Hutchins v. FedexGround Package Sys., Summit App. No. 22838, 2005-Ohio-6985, at ¶ 20
(affirming trial court's grant of summary judgment against claimant where commission refused to exercise continuing jurisdiction and reopen dismissed claim, and stating, "[b]ecause [the claimant] attempted to refile that claim almost four years after the date of her alleged injuries, the claim is barred by the statute of limitations"). Relator has not raised such a jurisdictional argument here, nor does it appear that relator could have because it is a matter that a common pleas court would ordinarily resolve on direct appeal. See State ex rel. Hinds v.Indus. Comm., 84 Ohio St.3d 424, 425, 1999-Ohio-472 (affirming dismissal of mandamus where commission ruled that statute of limitations under R.C. 4123.52 barred participation in fund); State ex rel. Ellwood Eng.Casting Co. v. Indus. Comm., Franklin App. No. 01AP-1065, 2002-Ohio-3335, at ¶ 62 (stating that issue whether statute of limitations under R.C. 4123.84 barred participation in fund was matter ordinarily resolved on appeal).
 {¶ 25} Here, relator's subject-matter jurisdiction arguments rest solely on the commission's consideration of a claim that the commission purportedly dismissed, but the bureau reactivated. Given the commission's broad authority to investigate and *Page 10 
adjudicate claims, we cannot conclude that the commission's actions were contrary to the statutory requirements defining its subject-matter jurisdiction. Therefore, while we have addressed relator's procedural arguments in a different context, we overrule relator's second objection.
 {¶ 26} In summary, we overrule relator's first and second objections, and we sustain relator's third objection. We also correct two typographical errors in the magistrate's decision, neither of which affects the outcome. In ¶ 30, we correct the quote from the DHO order to cite "Ohio Administrative Code Rule 4121-3-09," not "Ohio Administrative Code Rule 4121-3-06." In ¶ 50, we correct the magistrate's reference to "R.C. 4123.110" to "R.C. 4123.10." Having made these corrections, we adopt the magistrate's decision as our own, including the findings of fact and conclusions of law contained in it, except as we have detailed above. In accordance with our and the magistrate's decision, the requested writ is denied.
Objections sustained in part and overruled in part, writ of mandamusdenied.
 PETREE and GREY, JJ., concur.
GREY, J., retired of the Fourth Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution. *Page 11 
 APPENDIX A MAGISTRATE'S DECISION IN MANDAMUS {¶ 27} Relator, General Electric Company, has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of *Page 12 
Ohio ("commission") to vacate any orders issued by the commission addressing the merits of the claim of Bina McCary ("claimant") after the commission's interlocutory ex parte order mailed July 15, 2003, dismissing claimant's initial FROI-1 because claimant failed to submit the minimum documentation required by commission resolution R03-1-02, and ordering the commission to abstain from addressing claimant's second FROI-1 which contained the required minimum evidence on the grounds that the interlocutory ex parte order dismissing the first FROI-1 precludes claimant from ever establishing that she contracted asbestosis during the course of her employment with relator.
Findings of Fact: {¶ 28} 1. Claimant completed an FROI-1 form which she signed on February 7, 2003. Claimant alleged that she had contracted asbestosis during the course of her employment with relator. Claimant attached to her FROI-1 a copy of the B-reader's x-ray report.
 {¶ 29} 2. Relator rejected claimant's claim for the following reason: "Insurer rejects claim based upon lack of medical documentation to support an occupational disease."
 {¶ 30} 3. By interlocutory ex parte order mailed July 15, 2003, the commission dismissed claimant's FROI-1 application for the following reasons:
 Pursuant to Industrial Commission Resolution R03-1-02 dated 3/5/2003, the Injured Worker's FROI-1 application, filed 04/17/2003, is dismissed.
 By said Resolution, the Industrial Commission directed the handling of asbestos-related claims in compliance with State ex rel. Hubbard v. Industrial Commission, 96-Ohio St.3d 336, 2002-Ohio 4795. *Page 13 
 Resolution R03-1-02 provides that the minimum evidence of:
 [One] a written interpretation of x-rays by a certified B-Reader
 [Two] a pulmonary function and interpretation by a licensed physician and
 [Three] an opinion of causal relationship by a licensed physician
 must be provided prior to either the referral to a BWC specialist pursuant to ORC 4123.68 in claims for asbestosis or the adjudication of a contested claim filed for any asbestos-related occupational disease other than asbestosis.
 Since the FROI-1 in question does not contain a pulmonary function and interpretation by a licensed physician and an opinion of causal relationship by a licensed physician, it is therefore dismissed.
 This order is interlocutory in nature and not subject to appeal pursuant to the Ohio Administrative Code Rule 4121-3-0[9].
 {¶ 31} Despite the fact that the commission's interlocutory ex parte order indicated that it was not subject to appeal pursuant to Ohio Adm. Code 4121-3-09, claimant attempted to appeal the dismissal to the Trumbull County Court of Common Pleas pursuant to R.C. 4123.512.
 {¶ 32} 4. Relator filed a motion to dismiss claimant's appeal for lack of jurisdiction. That motion was ultimately granted by the trial court. The court found that, because the commission did not make a determination regarding claimant's right to participate in the workers' compensation fund, there was no appealable order pursuant to R.C.4123.512. *Page 14 
 {¶ 33} 5. Thereafter, claimant submitted the required medical evidence as set forth in commission resolution R03-1-02 and requested that her claim be set for hearing. Claimant submitted the June 16, 2003 report of Alvin J. Schonfeld, D.O., who specializes in pulmonary medicine. Dr. Schonfeld opined as follows:
 * * * On the basis of the medical history review, which is inclusive of a significant exposure to asbestos dust, the physical examination and the chest radiograph, the diagnosis of bilateral asbestosis is established within a reasonable degree of medical certainty. This diagnosis is causally related to her workplace exposure to asbestos at the Ravenna Arsenal and General Electric[.]
 {¶ 34} Claimant also submitted the April 20, 2001 report of Prasadarao G. Kondapalli, M.D., who reviewed claimant's x-rays and opined as follows:
 The film dated 3-12-01 is of acceptable quality, underpenetrated. Irregular opacities are present in the lower and middle zones of 2/2 profusion bilaterally. There are no pleural abnormalities present.
 With a significant occupational exposure history to asbestos dust, these findings are consistent with the diagnosis of bilateral interstitial fibrosis due to asbestosis.
 {¶ 35} Claimant also submitted the pulmonary function studies obtained by Dr. Schonfeld.
 {¶ 36} 6. By order mailed March 22, 2005, the Ohio Bureau of Workers' Compensation ("BWC") acknowledged that it had received claimant's application requesting that her claim be allowed as a work-related injury or disease and referring her for an appointment with Kenneth Kretchmer, M.D., scheduled for April 14, 2005. A copy of this order was also mailed to relator. *Page 15 
 {¶ 37} 7. In his report dated July 1, 2005, Dr. Kretchmer opined that claimant had not contracted asbestosis as follows:
 Based on these findings, it is my opinion that the medical evidence does not support the diagnosis of asbestosis. Although Mrs. McCary describes a history of significant exposure with an appropriate latency period, the most recent B-reader chest x-ray interpretation demonstrates abnormalities more consistent with Mrs. McCary's obesity and suboptimal inspiratory effort rather than asbestosis. Although pulmonary function studies demonstrate no significant restrictive impairment, the DLCO is abnormal. This finding may be on the basis of a poor inspiratory effort with the diffusion testing, although high-resolution CT scan of the thorax would be useful in distinguishing the contradiction between Dr. Meziane's B-reader interpretation, Dr. Condapalli's B-reader interpretation, and the abnormal DLCO. Other than obesity, I am not aware of other exposures or medical conditions contributing to Mrs. McCary's current symptoms.
 {¶ 38} 8. By order mailed July 13, 2005, the BWC referred claimant's claim to the commission to consider claimant's FROI-1 filed April 17, 2003.
 {¶ 39} 9. The matter was heard before a district hearing officer ("DHO") on August 26, 2005. Neither claimant nor her counsel appeared; however, relator was represented at the hearing. The DHO relied upon the report of Dr. Kretchmer and concluded that claimant did not contract an asbestosis-related occupational disease during the course of her employment with relator. At the hearing, relator had argued that the commission did not have jurisdiction to address the merits of claimant's application because the commission had previously dismissed her first FROI-1 and the common pleas court had dismissed her appeal. The DHO responded as follows:
 As a preliminary matter, the employer maintained that the Industrial Commission has no jurisdiction to address the merits of this application. In support, the employer cited a *Page 16 
trial court Judgment Entry in Trumbull County Court of Common Pleas Case # 03 CV 2198. The Hearing Officer finds that this entry does not preclude the Industrial Commission from making a ruling on the merits of this claim. To the contrary, the substance of this entry is that the injured worker did not exhaust administrative remedies and obtain a ruling on the merits by the Industrial Commission. Therefore, the Hearing Officer makes the following substantive findings.
 {¶ 40} 10. Claimant appealed from the DHO order; however, relator did not.
 {¶ 41} 11. Claimant's appeal was heard before a staff hearing officer ("SHO") on November 9, 2005. The SHO affirmed the prior DHO order and denied claimant's FROI-1 based upon the report of Dr. Kretchmer and the April 21, 2005 report from Dr. Meziane, who both concluded that claimant did not contract asbestosis during the course of her employment with relator. As such, claimant's claim was disallowed.
 {¶ 42} 12. Claimant's further appeal was refused by order of the commission mailed December 1, 2005.
 {¶ 43} 13. Thereafter, claimant appealed the commission's determination that she was not entitled to participate in the workers' compensation fund for an asbestosis-related occupational disease to the Trumbull County Court of Common Pleas.
 {¶ 44} 14. While the matter remained pending in the common pleas court, relator filed the instant mandamus action asserting that the commission did not have jurisdiction to consider claimant's second FROI-1 which claimant submitted after the commission issued its interlocutory ex parte order dismissing her first FROI-1 on grounds that the commission lacked jurisdiction to consider whether claimant had contracted an asbestosis-related occupational disease due to claimant's initial failure to supply sufficient medical documentation as required. *Page 17 
 {¶ 45} 15. In lieu of a brief, claimant has filed a motion to dismiss relator's complaint.
 {¶ 46} 16. The matter is currently before the magistrate.
Conclusions of Law: {¶ 47} The Supreme Court of Ohio has set forth three requirements which must be met in establishing a right to a writ of mandamus: (1) that relator has a clear legal right to the relief prayed for; (2) that respondent is under a clear legal duty to perform the act requested; and (3) that relator has no plain and adequate remedy in the ordinary course of the law. State ex rel. Berger v. McMonagle (1983), 6 Ohio St.3d 28.
 {¶ 48} For the reasons that follow, it is this magistrate's decision that this court should deny relator's request for a writ of mandamus.
 {¶ 49} In the present case, relator's argument is that the commission's interlocutory ex parte order "dismissing" claimant's first FROI-1 on grounds that claimant failed to submit all the documentation necessary when alleging that she had contracted asbestosis constituted a dismissal on the merits forever foreclosing claimant from pursing the matter. Relator argues, by way of analogy, that when a court dismisses a plaintiff's action, such dismissal is on the merits.
 {¶ 50} Relator's argument fails for several reasons. Relator's argument ignores the mandate of R.C. 4123.[10] which provides that the commission shall not be bound by the usual common law, or statutory rules of evidence, or by any technical or formal rules of procedure, but may proceed in such a manner as is best calculated to ascertain the substantial rights of the parties and to carry out justly the spirit of the act. *Page 18 
 {¶ 51} In the present case, claimant's original FROI-1 did not contain all the documentation required in order for claimant to meet her burden of establishing that she had contracted an asbestosis-related disease during the course of her employment with relator. The matter never proceeded to hearing. After the commission's interlocutory ex parte order dismissing her FROI-1, claimant was not precluded from resubmitting her FROI-1 with sufficient documentation as required provided that she still file within the statutory time limits provided. As such, relator's argument that this ex parte dismissal forever barred claimant from pursuing the matter is unfounded and is not supported by law.
 {¶ 52} Unfortunately, this matter became complicated because the claimant mistakenly pursued an appeal pursuant to R.C. 4123.512 from the commission's interlocutory ex parte order dismissing her FROI-1 in spite of the fact that language contained within that order specifically indicated that it was not appealable. However, this mistake on claimant's part does not convert the commission's interlocutory ex parte order into something which it is not and never was. It was not a dismissal on the merits.
 {¶ 53} Furthermore, although relator had argued before the DHO that the commission lacked jurisdiction to consider claimant's second FROI-1, relator failed to appeal the DHO's order wherein the DHO found that the commission did have jurisdiction to address claimant's second FROI-1. Because relator failed to appeal the DHO's order to the next level, relator cannot pursue that matter here in this court in a mandamus action. See State ex rel. Quarto Mining Co. v. Foreman (1997),79 Ohio St.3d 78. *Page 19 
 {¶ 54} For the foregoing reasons, it is this magistrate's conclusion that relator has not demonstrated that the commission abused its discretion in addressing the merits of claimant's second FROI-1 and relator's request for a writ of mandamus should be denied. The resolution of this matter renders claimant's motion to dismiss moot.
 STEPHANIE BISCA BROOKS MAGISTRATE *Page 1