[Cite as *State ex rel. Gunter v. Indus. Comm.*, 2017-Ohio-1571.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio ex rel. Calvin Gunter, | : | |
| Relator, | : | |
| v. | : | No. 15AP-562 |
| Industrial Commission of Ohio, and Eclipse Advantage LLC, | : | (REGULAR CALENDAR) |
| | : | |
| Respondents. | : | |
| | : | |

D E C I S I O N

Rendered on April 27, 2017

**On brief:** *Gruhin & Gruhin, LLC,* and *Michael H. Gruhin,* for relator.

**On brief:** *Michael DeWine*, Attorney General, and *John Smart,* for respondent Industrial Commission of Ohio.

IN MANDAMUS
ON OBJECTIONS TO MAGISTRATE'S DECISION

BRUNNER, J.

{¶ 1} Relator, Calvin Gunter, has filed this original action requesting this Court to issue a writ of mandamus ordering respondent, Industrial Commission of Ohio ("the commission"), to vacate its order mailed August 1, 2013 setting his average weekly wage ("AWW") at $242.41, to order that his AWW should be set at or near $503.64 (incorporating income earned from the sale of used cars[1]), and to adjust all previously paid benefits accordingly.

---

[1] The magistrate's decision notes that Gunter in his brief asks this Court to order the commission to reset his AWW "at a minimum of $503.64 pursuant to the standard formula taking into account his net business earnings" or, in the alternative, "at a minimum of $400.00, in accord with the May 28, 2013, DHO determination utilizing to special circumstances." (Sept. 16, 2015 Gunter's Brief at 24.)

{¶ 2} Pursuant to Civ.R. 53 and Loc.R. 13(M) of the Tenth District Court of Appeals, we referred this matter to a magistrate, who issued the appended decision, including findings of fact and conclusions of law. The magistrate found that Gunter had not demonstrated that the commission abused its discretion in denying his request for reconsideration. Consequently, the magistrate finds that this Court should deny Gunter's request for a writ of mandamus.

{¶ 3} Gunter has filed objections to the magistrate's conclusions of law.

{¶ 4} After an examination of the magistrate's decision, an independent review of the record pursuant to Civ.R. 53, and due consideration of the objections, we overrule Gunter's objections and adopt the magistrate's findings of fact and conclusions of law as our own. Because we find that the commission did not abuse its discretion, we deny Gunter's request for a writ of mandamus.

## I. FACTS AND PROCEDURAL HISTORY

{¶ 5} On November 15, 2012, Gunter sustained an injury in the course of his employment with respondent, Eclipse Advantage LLC ("Eclipse"). Gunter had worked only ten hours when he was injured. His claim was allowed, and he filed for temporary total compensation ("TTC") with the Ohio Bureau of Workers' Compensation ("BWC").

{¶ 6} On January 22, 2013, Gunter filed a motion asking that his full weekly wage ("FWW") and AWW be set at $400. On March 12, 2013, BWC set the AWW at $159.88 based on information in the file. Gunter appealed, arguing that the AWW should be higher.

{¶ 7} On May 15, 2013, Gunter filed an amended motion providing additional information in anticipation of the district-level hearing set for May 28, 2013 on the issue of his AWW. Gunter requested that his AWW be set at not less than $819.45, an amount incorporating self-employment income of $16,000 from selling used cars in the year before his injury. Additionally, he asserted that he would have earned $400 per week working for Eclipse. Gunter provided pay stubs, unemployment statements, his tax returns for 2011 and 2013, and his own calculations. Gunter withdrew this motion but not the evidence attached to it after the May 28, 2013 district level hearing.

{¶ 8} A district hearing officer ("DHO") heard Gunter's appeal on May 28, 2013. By order mailed June 1, 2013, the DHO vacated BWC's March 12, 2013 order and granted

Gunter's motion of January 22, 2013, setting the AWW at $4000, which the DHO stated was the weekly amount Gunter would have earned at Eclipse.

{¶ 9} On June 14, 2013, Gunter appealed the DHO's June 1, 2013 order setting the AWW at $400.

{¶ 10} A staff hearing officer ("SHO") heard Gunter's appeal of the DHO's order. By order mailed August 1, 2013, the SHO vacated the DHO's order and reset the AWW at $242.41. The SHO found that Gunter, in the one-year period prior to his injury, had worked 27.57 weeks and had received wages in the amount of $6,683.25. The SHO computed the AWW by dividing the $6,683.25 by 27.57. The SHO specifically rejected Gunter's request to include in the AWW computation the $16,000 in self-employment income he claimed from selling used cars in the year before his injury. The SHO found that the business income Gunter had reported on his 2011 and 2012 tax returns did not account for business expenses associated with the purchase and sale of the motor vehicles, and thus did not provide "an accurate reflection of earnings received for his efforts." (Aug. 26, 2015 Stipulation of Evidence at 87.) The SHO determined that incorporating the self-employment income figures into Gunter's AWW calculation "would artificially increase the resulting [AWW] figure and result in a windfall to [Gunter]." *Id.* The SHO determined that the AWW computation of $242.41 was appropriate in Gunter's claim and ordered all prior compensation be adjusted accordingly. The SHO stated the order was based on information in the file, specifically Gunter's wage information, unemployment compensation records, and his 2011 and 2012 tax returns. The SHO also stated that he had considered the statements from the purchasers of the used cars Gunter had sold.

{¶ 11} On August 14, 2013, Gunter appealed the SHO's order, arguing that the SHO had committed mistakes of fact and law in setting the AWW and FWW by acknowledging but not utilizing the self-employment wages Gunter had presented. Gunter also argued there was "new evidence" to validate his self-employment income as "appropriate to include in the AWW calculation." (Emphasis omitted.) (Stipulation of Evidence at 93.) Gunter's new evidence included his affidavit executed on August 12, 2013, that provided information regarding the used car sales he had transacted in the one-year period before his injury.

{¶ 12} The commission denied both Gunter's appeal of the SHO's order and his request for reconsideration of the order.

{¶ 13} Gunter initiated this action against the commission on June 30, 2015. The commission timely answered Gunter's amended complaint and asserted that Gunter has no clear legal right to the relief sought.

{¶ 14} The magistrate concluded that Gunter bore the burden of presenting evidence from which the commission could properly calculate his AWW and, to the extent that Gunter failed to present that evidence, he failed to meet his burden. The magistrate further concluded that it was neither an abuse of discretion nor a clear mistake of law or fact for the SHO to calculate the AWW using evidence Gunter had provided as of the hearing date. The magistrate found that the commission was not required to grant Gunter's appeal from the SHO's decision because such appeals are discretionary, and the commission did not abuse its discretion by refusing "to grant an appeal or reconsideration when [Gunter] failed to present the proper evidence from which the SHO, at hearing, determined his AWW." (App'x at ¶ 44.)

## II. OBJECTIONS TO THE MAGISTRATE'S DECISION

{¶ 15} Gunter presents for our review two objections to the magistrate's decision:

> [1.] The Magistrate erred when she concluded that the Industrial Commission set Relator's average weekly wage ("AWW") in an amount that provides substantial justice in contravention of the requirements of O.R.C. 4123.61 and Ohio case law, which provides that the setting of the AWW is to place an Injured Worker in as similar a financial position as he/she would have been if he/she were still working, but for the industrial injury.

> [2.] The Magistrate erred when she concluded that the Industrial Commission was not required to accept Relator's third level appeal from the staff level in order to consider supplemental evidence submitted with the appeal which clarified the self-employment business income/expense information that already was present in the claim file at the staff hearing level.

## III. DISCUSSION

{¶ 16} To be entitled to relief in mandamus, Gunter must establish that he has a clear legal right to relief, and that the commission has a clear legal duty to provide such relief. *State ex rel. Pressley v. Indus. Comm.*, 11 Ohio St.2d 141 (1967), paragraph nine of

15AP-562

the syllabus. To do so, Gunter must demonstrate that the commission abused its discretion, and "in this context, abuse of discretion has been repeatedly defined as a showing that the commission's decision was rendered without some evidence to support it." *State ex rel. Burley v. Coil Packing, Inc.*, 31 Ohio St.3d 18, 20 (1987). To be successful in this mandamus action, he must show that the commission's decision is not supported by some evidence in the record. *State ex rel. Elliott v. Indus. Comm.*, 26 Ohio St.3d 76 (1986). Conversely, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion, and mandamus is not appropriate. *State ex rel. Lewis v. Diamond Foundry Co.*, 29 Ohio St.3d 56 (1987). And questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as the fact finder. *State ex rel. Teece v. Indus. Comm.*, 68 Ohio St.2d 165 (1981).

{¶ 17} Gunter argues that the commission abused its discretion in four instances. Gunter first argues that the commission's SHO set the AWW by applying the standard formula improperly and declining to apply the special circumstances provision. Second, Gunter argues that the commission's SHO did not sua sponte hold the issue of AWW in abeyance to allow Gunter opportunity to present additional evidence regarding his self-employment income. Third, Gunter argues that the commission refused to hear his appeal and to consider "newly available" evidence regarding his self-employment income. Fourth, Gunter argues that the commission acted contrary to R.C. 4123.61 in determining the AWW without including all of Gunter's income earned in the year before his injury. The arguments Gunter presents in his objections are the same arguments that were presented to and rejected by this Court's magistrate. We agree with the magistrate and do not find merit in those arguments.

{¶ 18} The magistrate's decision includes a comprehensive discussion of the statutory and case law regarding the computation of AWW. The magistrate's decision takes into account this Court's decision in *State ex rel. Zingales v. Indus. Comm.*, 10th Dist. No. 08AP-643, 2009-Ohio-1860, in which we held that the calculation of AWW should be based on a claimant's net income following deductions from gross income. To do otherwise would result in a windfall for the claimant. *Id.*

{¶ 19} The magistrate found that the SHO did not abuse his discretion in rejecting Gunter's evidence about his self-employment income. The SHO reviewed and considered all the evidence Gunter had provided at the time of the hearing, including the tax returns on which Gunter had reported his self-employment income. The SHO's August 1, 2013 order explained the formula used to calculate Gunter's AWW. The order also described Gunter's evidence concerning self-employment income from used car sales in 2011 and 2012 with the explanation that those income figures did not reflect actual earnings, such that including them into Gunter's AWW calculation would create for him a windfall.

{¶ 20} The magistrate determined that the SHO was not required to set Gunter's AWW at $400, as the DHO had. Gunter himself appealed the $400 AWW administratively and asked that his AWW be set at $819.45. In his complaint, he asks this Court to set his AWW "at or near $503.64." (June 30, 2015 Am. Compl. at 4.) In light of the record, Gunter has not properly raised before the commission or this Court his claim to a $400 AWW.

{¶ 21} The magistrate correctly concluded that the commission was not required to accept Gunter's third-level appeal in order to consider newly available evidence about his self-employment business income/expenses. The record before us indicates that Gunter had the information at the time of the district and staff level hearings, but he did not seek to present it until he appealed the SHO's order. As such, the evidence could be more accurately characterized as newly provided, rather than newly available. The burden was on Gunter to provide that evidence in time for consideration at the hearings, and he did not successfully or timely carry it.

## IV. CONCLUSION

{¶ 22} Upon review of the magistrate's decision, an independent review of the record, and due consideration of Gunter's objections, we find the magistrate has properly stated the pertinent facts and applied the appropriate law. Therefore, we overrule Gunter's objection to the magistrate's decision and adopt the decision as our own, including the findings of facts and conclusions of law therein. In accordance with the magistrate's decision, the requested writ of mandamus is denied.

15AP-562

*Objection overruled;*
*writ of mandamus denied.*

**BROWN and LUPER SCHUSTER, JJ., concur.**

————————————

15AP-562

<u>APPENDIX</u>

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio ex rel. Calvin Gunter, | : | |
| Relator, | : | |
| v. | : | No.  15AP-562 |
| Industrial Commission of Ohio, and Eclipse Advantage LLC, | : | (REGULAR CALENDAR) |
| | : | |
| Respondents. | : | |
| | : | |

MAGISTRATE'S DECISION

Rendered on February 25, 2016

*Gruhin & Gruhin, LLC,* and *Michael H. Gruhin,* for relator.

*Michael DeWine*, Attorney General, and *John Smart,* for respondent Industrial Commission of Ohio.

IN MANDAMUS

{¶ 23} Relator, Calvin Gunter, has filed this original action requesting that this court issue a writ of mandamus ordering respondent, Industrial Commission of Ohio ("commission"), to vacate its order which set his average weekly wage ("AWW") at $242.41, and ordering the commission to redetermine his AWW as follows:

> 1) [T]hat his AWW be set at a minimum of $503.64 pursuant to the standard formula taking into account his net business earnings; or 2) in the alternative his AWW be set at a minimum of $400.00, in accord with the May 28, 2013, DHO determination utilizing to special circumstances.

15AP-562

(Relator's Brief, 24.)

<u>Findings of Fact</u>:

{¶ 24} 1. Relator sustained a work-related injury on November 15, 2012 , his first full day of work with his employer, Eclipse Advantage, LLC ("Eclipse"). Relator's workers' compensation claim has been allowed for the following conditions:

> Crushing injury right foot; crushing injury right lower leg; open fracture right tibia shaft with tibia; open fracture right tibial plafond; traumatic compartment syndrome right lower extremity; traumatic compartment syndrome right foot; open wound right knee; open wound right foot.

{¶ 25} 2. The Ohio Bureau of Workers' Compensation ("BWC") originally set his AWW at $80.82.

{¶ 26} 3. In January 2013, relator filed a C-86 motion asking that his AWW be reset at $400 per week. In support, relator submitted an affidavit of unemployment and paystubs from Michael's Furniture.

{¶ 27} 4. In an order mailed February 4, 2013, the BWC reset relator's AWW at $142.11.

{¶ 28} 5. In an order mailed March 12, 2013, the BWC reset relator's AWW at $159.88.

{¶ 29} 6. Relator appealed and asked that his AWW be set at no less than $819.45. Relator asserted that he was unemployed for approximately 24 weeks during the relevant time period. Relator submitted a wage statement including his own calculations, W-2s from Michael's Furniture and Eclipse, a printout from Ohio Department of Job and Family Services, and tax return information from 2011 and 2012 when he had self-employment income from buying and selling cars. Relator sold three cars in 2011 for $6,000, and four cars in 2012 for $10,000. Relator also stated:

> In 2012, while I was working at Michael's I was making enough money to buy cars in order to sell them.
>
> I was hired by Eclipse at $10.00/hour for 24 hours on 1st shift and 16hrs on 3rd shift. The understanding was that I would be paid $400.00 per week, but I was injured before I could start the 3rd shift work.

15AP-562

{¶ 30} 7.  Relator's appeal was heard before a district hearing officer ("DHO") on May 28, 2013.  The DHO set relator's AWW at $400 per week, stating:

> The average weekly wage is set at $400.00 per week, which is the weekly rate that the Injured Worker would have earned for the Employer of record per the 05/13/2013 C-94-A Wage Statement/Affidavit.

{¶ 31} 8.  Relator appealed and the matter was heard before a staff hearing officer ("SHO") on July 29, 2013.  At that time, the SHO set relator's AWW at $242.41.  The SHO explained his calculations, stating:

> The Staff Hearing Officer orders that the average weekly wage for this claim be set at $242.41. This figure is computed by dividing the Injured Worker's earnings of $6,683.25, received in the one year period prior to injury, by a divisor of 27.57 weeks of work. (The Staff Hearing Officer finds that the Injured Worker was unemployed 24.43 weeks in the one year period prior to injury for reasons beyond his control, specifically a layoff from Michael's Furniture on or about 05/27/2012 -- the Injured Worker returned to work on or about 11/14/2012).
>
> In issuing this order, the Staff Hearing Officer finds that the Injured Worker received wages in the amount of $1,385.25 from Michael's Furniture for the period from 11/15/2011 through 12/31/2011. This finding is based upon the Injured Worker's C-94A affidavit in file. The Staff Hearing Officer further finds that in the period from 01/01/2012 through 05/27/2012, the Injured Worker received earnings of $5,198 from Michael's Furniture. The Staff Hearing Officer additionally finds that the Injured Worker earned $100 with Eclipse Advantage prior to his injury of 11/15/2012. Dividing the sum of these totals ($6,683.25) by a divisor of 27.57 weeks yields $242.41 for the average weekly wage.
>
> In issuing this order, the Staff Hearing Officer rejects the Injured Worker's request to include earnings from self-employment from the sale of motor vehicles in the 2011 and 2012 tax years. The Injured Worker argues that he had earnings of $6,000 from the sale of three motor vehicles in the 2011 tax year: 1) $1,000 in earnings from the sale of a 1997 Pontiac on 11/01/2011; 2) $2,000 from the sale of a 2002 Dodge Intrepid on 11/21/2011; and 3) $3,000 from a 2001 Yamaha R6 sale, date unknown. The Staff Hearing Officer further notes the Injured Worker's argument that he

received earnings of $10,000 for the 2012 tax year for the sale of four motor vehicles: 1) a 2001 Dodge Ram Truck in the amount of $5,000 on 02/18/2012; 2) a 1995 Chevrolet Camaro in the amount of $1,200 on 04/22/2012; 3) a 2002 Buick Regal in the amount of $2,000 on 03/09/2012; and 4) a 2001 Chrysler Sebring vehicle on or about 01/18/2012 in the amount of $1,800.

The Staff Hearing Officer declines to include these sales figures into the Injured Worker's average weekly wage calculation for the following reason. The Staff Hearing Officer finds that the Injured Worker's C-94A wage statement in file indicates that "in 2012, while I was working at Michael's, I was ***making enough money to buy cars in order to sell them.***" (Emphasis added.) The business income from self-employment reflected on the 2011 and 2012 tax returns in file ($6,000 and $10,000, respectively), does not account for the amount of the business expense associated with the purchase of the vehicles which the Injured Worker sold. Thus, the Staff Hearing Officer concludes that the $6,000 and $10,000 income from self-employment reflected by the Injured Worker's tax returns do not provide an accurate reflection of earnings received from his efforts. Rather, the $6,000 and $10,000 figure reflect business income which was not off-set by operating expenses (the initial outlay of money for the purchase of such vehicles, the cost for the title transfer of the vehicles, and insurance costs to insure the business inventory against loss or damage, etc.). Therefore, incorporating the $6,000 and $10,000 figures into the Injured Worker's average weekly wage computation would artificially increase the resulting average weekly wage figure and result in a windfall to the Injured Worker. Simply stated, business income is not akin to earnings. Operating expenses, such as the cost for the purchase of the automobiles sold by the Injured Worker, must be considered and deducted from the business income before an accurate determination of profit or earnings from the Injured Worker's self-employment as a car salesman may be established.

Given these above findings, the Staff Hearing Officer determines that the average weekly wage computation of $242.41 is appropriate in this claim. All prior compensation is to be adjusted in accord with this order.

This order is based upon the Injured Worker's wage documentation in file from Michael's Furniture; the wage

> information in file from Eclipse Advantage; the unemployment compensation records in file reflecting 24.43 weeks of unemployment; and the Injured Worker's 2011 and 2012 tax returns in file. The Staff Hearing Officer also considered the statements from the purchasers of the above described vehicles with the dates of such purchases indicated therein.

{¶ 32} 9. Relator's further appeal was refused by order of the commission mailed September 21, 2013.

{¶ 33} 10. Thereafter, relator filed the instant mandamus action in this court.

Conclusions of Law:

{¶ 34} For the reasons that follow, it is this magistrate's decision that this court should deny relator's request for a writ of mandamus.

{¶ 35} The Supreme Court of Ohio has set forth three requirements which must be met in establishing a right to a writ of mandamus: (1) that relator has a clear legal right to the relief prayed for; (2) that respondent is under a clear legal duty to perform the act requested; and (3) that relator has no plain and adequate remedy in the ordinary course of the law. *State ex rel. Berger v. McMonagle*, 6 Ohio St.3d 28 (1983).

{¶ 36} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, relator must show a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. *State ex rel. Pressley v. Indus. Comm.*, 11 Ohio St.2d 141 (1967). A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order which is not supported by any evidence in the record. *State ex rel. Elliott v. Indus. Comm.*, 26 Ohio St.3d 76 (1986). On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. *State ex rel. Lewis v. Diamond Foundry Co.*, 29 Ohio St.3d 56 (1987). Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder. *State ex rel. Teece v. Indus. Comm.*, 68 Ohio St.2d 165 (1981).

{¶ 37} Under workers' compensation law, benefits payable to claimants are calculated based upon the figure known as the AWW. R.C. 4123.61 provides:

15AP-562

> The average weekly wage of an injured employee at the time of the injury * * * is the basis upon which to compute benefits.
>
> * * *
>
> In ascertaining the average weekly wage for the year previous to the injury, * * * any period of unemployment due to sickness, industrial depression, strike, lockout, or other cause beyond the employee's control shall be eliminated.
>
> In cases where there are special circumstances under which the average weekly wage cannot justly be determined by applying this section, the administrator of workers' compensation, in determining the average weekly wage in such cases, shall use such method as will enable the administrator to do substantial justice to the claimants, provided that the administrator shall not recalculate the claimant's average weekly wage for awards for permanent total disability solely for the reason that the claimant continued working and the claimant's wages increased following the injury.

{¶ 38} Here, relator contends that the commission should have applied the "special circumstances" provision of R.C. 4123.61 to calculate his AWW. Relator asserts that the SHO utilized the standard formula and then refused to include all of his earnings in that calculation resulting in an unfair, low AWW. At a minimum, relator asserts he has a clear legal right to have his AWW set at $400 (as the DHO found) because he would have earned $400 per week at Eclipse but for the fact that he was injured.

{¶ 39} First, the SHO was not required to set relator's AWW at $400. Relator asserts this figure is the only figure which would demonstrate the SHO utilized the special circumstances provision of R.C. 4123.61. In determining his AWW, the SHO reviewed and considered all the evidence relator presented, including his tax returns. In discussing those tax returns, the SHO specifically noted that, in providing information of his business income, relator did not offset that income by operating expenses. The SHO specifically found that utilizing relator's gross income from the sale of automobiles was not the proper figure from which to determine his AWW.

{¶ 40} To the extent relator argues the commission abused its discretion by not at least setting his AWW at $400, the magistrate disagrees. In his affidavit, relator stated "I

was hired by Eclipse at $10.00/hour for 24 hrs on 1st shift and 16 hours on 3rd shift. The understanding was that I would be paid $400.00 per week, but I was injured before I could start the 3rd shift work." Unfortunately, relator's statement is the only evidence that he was going to earn $10.00 an hour/$400 a week. Further, in his brief, he indicates he was hired by Eclipse at "$8.50 per hour for 40 hour work-week." (Relator's Brief, 7.) This information contradicts his assertion. The SHO could have used the special circumstances provision and set his AWW at $400, but, based on his evidence, relator was attempting to get his AWW set at $819.45. It cannot be said the commission abused its discretion by not setting his AWW at $400.

{¶ 41} In *State ex rel. Zingales v. Indus. Comm.*, 10th Dist. No. 08AP-643, 2009-Ohio-1860, this court considered the Supreme Court of Ohio's decision concerning the calculation of AWW in *State ex rel. McDulin v. Indus. Comm.*, 89 Ohio St.3d 390 (2000), and concluded that the calculation of the AWW should be based on a person's net income following deductions from their gross income. To do otherwise would result in a windfall for the claimant.

{¶ 42} In the present case, relator acknowledges he "was not aware that he could have and should have deducted expenses and costs associated with the transactions of the vehicles." (Relator's Brief, 18.) As such, relator appears to concede that the SHO's decision not to accept his gross income for purposes of determining his AWW was correct, although, in his opinion, the SHO still should have used the figures he reported to the Internal Revenue Service. In arguing that the SHO nevertheless calculated his AWW incorrectly warranting reconsideration, relator again cites this court's decision in *Zingales* and asserts that a clear mistake of law occurred. For the reasons that follow, this magistrate disagrees.

{¶ 43} In *Zingales,* the BWC set the AWW of Anthony Zingales, Sr., at $694.75 in November 2000. Eight years later, the BWC filed a motion requesting the commission invoke its continuing jurisdiction under R.C. 4123.52 to modify and reduce Zingales' AWW. The BWC cited the *McDulin* decision and asserted that Zingales' gross earnings, including business expenses, had been improperly utilized to calculate his AWW when, instead, his net earnings should have been utilized to determine his AWW. The commission exercised its continuing jurisdiction and modified Zingales' AWW. Here,

15AP-562

relator asserts that the commission should have applied the *Zingales* reasoning, granted his appeal, and recalculated his AWW.

{¶ 44} The problem with relator's argument is that the burden was on him to present evidence from which the commission could properly calculate his AWW. To the extent that relator failed to present evidence of his net income so the SHO could have utilized that figure and calculated his AWW, relator failed to meet his burden of proof. The SHO utilized the evidence which relator presented to calculate his AWW. That does not constitute an abuse of discretion nor does it constitute a clear mistake of law or fact and the commission was not required to grant relator's appeal from the SHO's decision because such appeals are discretionary. It is not an abuse of discretion for the commission to refuse to grant an appeal or reconsideration when relator failed to present the proper evidence from which the SHO, at hearing, determined his AWW.

{¶ 45} Based on the foregoing, it is this magistrate's decision that relator has not demonstrated that the commission abused its discretion in setting his average weekly wage and this court should deny his request for a writ of mandamus.

/S/ MAGISTRATE
STEPHANIE BISCA

**NOTICE TO THE PARTIES**

Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b).