HIRAM HOUSE, APPELLANT, *v.* INDUSTRIAL COMMISSION, APPELLEE.

(No. 87AP-180 — Decided December 1, 1987.)

*Walter, Haverfield, Buescher & Chockley, Paul W. Walter* and *Kenneth A. Zirm,* for appellant.

*Anthony J. Celebrezze, Jr.,* attorney general, *Michael L. Squillace, Dennis L. Hufstader* and *Helen M. Ninos,* for appellee.

MCCORMAC, J.   Hiram House, appellant, appeals an order of the Franklin County Court of Common Pleas which found that the reasonable cost of housing, which Hiram House provided for four of its employees, should be included in the calculation of its workers' compensation premium.

This assessment was originally determined by an auditor of the Bureau of Workers' Compensation and affirmed by the Industrial Commission's adjudicating committee and then the full commission.

Appellant asserts the following assignments of error:

"I. The court of common pleas erred in affirming the decision of the Industrial Commission of Ohio and failing to find that the promulgation of Ohio Administrative Code Rule 4121-7-14 constituted an abuse of discretion by the Industrial Commission of Ohio.

"II. The court of common pleas erred in affirming the decision of the Industrial Commission of Ohio and failing to find that the promulgation of Rule 4121-7-14, with its expansive and over-inclusive definitions as of 'payroll' and 'wage expenditures' was an unconstitutional exercise of nondelegable legislative powers."

Hiram House is a non-profit organization which runs a summer camp for inner-city children. It also operates a school camp and other camp operations during the school year. Because children stay overnight at the

camp, it is necessary that camp employees live on the premises. Four employees live at the camp. These employees are required to accept lodging on the premises as a condition of their employment.

In May 1984, an auditor for the Bureau of Workers' Compensation sent a letter to Hiram House stating that it would have to increase the amount it was paying into the State Workers' Compensation Insurance Fund. The auditor had determined that Hiram House should include $300 more in its payroll each month for each of the four employees living on the camp premises. The auditor concluded this amount was a reasonable house rental based on a study he made of Cleveland and East Cleveland rental rates.

The auditor based this payroll increase upon Ohio Adm. Code 4121-7-14(C). According to this rule, an employer is to include the reasonable value of remuneration that it gives to an employee in its calculation of payroll and wage expenditures. This payroll amount is used to determine the premium that the employer must remit to the Workers' Compensation Insurance Fund.

Ohio Adm. Code 4121-7-14(C) states:

"The terms 'payroll' and 'wage expenditures' as used in the rate manual, shall include the entire remuneration allowed by an employer to employees in the employer's service for the six months' period, such as wages, bonuses, commissions, negotiated tips, and severance pay * * *, overtime pay, vacation pay, non-negotiated tips used to supplement the minimum wage requirements, *the reasonable value of board, lodging, house or room rent,* laundry, food supplies, merchandise, or certificates and orders issued for merchandise or food supplies." (Emphasis added.)

Hiram House attacked the validity of this rule. A hearing was set before the adjudicating committee of the Industrial Commission which upheld the rule and the additional assessment of Hiram House.

There was a conflict in the evidence about whether Hiram House or Paul Walter, chairman of the board of Hiram House, ever received notice of this hearing before the adjudicating committee.

Hiram House appealed the decision of the adjudicating committee to the full Industrial Commission on July 17, 1985. The Industrial Commission upheld the rule and Hiram House's premium adjustment.

Hiram House appealed the commission's decision to the court of common pleas, which affirmed the decision.

In the first assignment of error, appellant argues that the trial court erred in affirming the decision of the Industrial Commission, which increased the amount included in Hiram House's monthly payroll. It also argues that the court erred in failing to find that the promulgation of Ohio Adm. Code 4121-7-14 by the commission was an abuse of discretion.

The trial court held that Ohio Adm. Code 4121-7-14 is valid because "Rev. Code 4123.29 gives latitude to the Commission to determine the premiums due from an employer on some other basis than payroll." The court also stated that "* * * [t]he intent of 4123.29 is to give authority to the Commission to make accurate assessments upon considerations beyond payroll if payroll is not reflective of the correct degree of risk. * * *"

R.C. 4123.29 provides as follows:

"The industrial commission shall classify occupations or industries with respect to their degree of hazard, and determine the risks of the different classes and fix the rates of premium of

the risks of the same, based upon the total payroll in each of said classes of occupation or industry sufficiently large to provide a fund for the compensation provided for in Chapter 4123. of the Revised Code, and to maintain a state insurance fund from year to year. The rate shall be set at a level that assures the solvency of the fund. Where the payroll cannot be obtained or, in the opinion of the commission, is not an adequate measure for determining the premium to be paid for the degree of hazard, the commission may determine the rates of premium upon such other basis, consistent with insurance principles, as is equitable in view of the degree of hazard, and whenever in such sections reference is made to payroll or expenditure of wages with reference to fixing premiums, such reference shall be construed to have been made also to such other basis for fixing the rates of premium as the commission may determine under this section."

Young, Ohio Workmen's Compensation Law (2 Ed. 1971) 267, Section 16.2, states that R.C. 4123.29 "empowers the Commission to classify industries with respect to their degree of hazard." The reason for this classification is that "[t]he more hazardous the occupation, the more likely it is to produce an injury." *Id.*

R.C. 4123.29 provides that payroll is to be used as the measure of exposure to the harm. A greater total hazard exists when one thousand people are employed than when only three people are. It is more likely that an injury will occur in the first situation than in the second. Young, *supra,* at 267, Section 16.3.

Thus, according to R.C. 4123.29 and Young's interpretation of it, the hazardousness and the total payroll in a classification are factors that the Industrial Commission uses to set basic rates in a classification. If the total payroll is not known or does not appear to be sufficient to cover the claims of injured workers in the classification, the commission may determine the premium rates on another basis which is consistent with insurance principles and equitable in view of the hazard of the classification.

As regards R.C. 4123.29, the issue in this case is whether the commission properly determined the payroll of appellant upon which its rate was to be based. In making that determination, the commission adopted a rule in which the terms "payroll" or "wage expenditures," as used in the workers' compensation rate manual, include remunerations such as the reasonable value of lodging provided to employees by their employer. Ohio Adm. Code 4121-7-14(C). Appellant challenges the promulgation of that rule on two grounds: (1) an abuse of discretion; and (2) an unconstitutional delegation of legislative power.

Section 35, Article II of the Ohio Constitution gives the legislature the right to pass laws dealing with collecting, administering, and distributing funds of workers' compensation. R.C. 4121.13(E) provides that the Industrial Commission shall "[a]dopt reasonable and proper rules relative to the exercise of its powers * * *." According to R.C. 4121.131, the Industrial Commission shall "fix rates and determine contributions as provided in sections 4123.34 and 4123.38 of the Revised Code * * *." R.C. 4123.38 specifies which employers shall contribute to the workers' compensation fund. R.C. 4123.34 states how premium rates shall be fixed and maintained. R.C. 4123.32 provides that "[t]he industrial commission shall adopt rules with respect to the collection, maintenance, and disbursements of the state insurance fund * * *."

Referring to a predecessor statute, the Supreme Court, in *State, ex rel.*

*Kildow,* v. *Indus. Comm.* (1934), 128 Ohio St. 573, 580, 192 N.E. 873, 876, found that the General Assembly had not only delegated rulemaking powers to the Industrial Commission but, in effect, gave the Industrial Commission a general mandate to make rules and regulations with respect to the collection, maintenance, and disbursements of the workers' compensation fund.

The court also found that reasonable rules promulgated by an administrative body under a valid grant from the legislature have the force and effect of law as long as the General Assembly has not preempted the field. *Kildow, supra.*

Under the above authority, in order to maintain a solvent workers' compensation insurance fund, the commission determines the risks of occupations and industries, classifies them according to these risks, and fixes premium rates. An employer provides information regarding its payroll and wage expenditures and, based upon the premium rates for the occupations within its business, the employer is assessed a premium. The employer pays this premium to the Workers' Compensation Insurance Fund.

According to Ohio Adm. Code 4121-7-02 and 4121-7-03, the rate manual informs an employer of the premium rates for each classification of its business. These rates are calculated so that the employer pays a certain premium for each $100 of payroll which is in a particular classification. Thus, defining payroll to include compensation of cash and remunerations other than cash, as does Ohio Adm. Code 4121-7-14(C), increases the premiums of employers like Hiram House, who provide lodging for their employees.

"Payroll" or "wage expenditures" is not explicitly defined in R.C. Chapter 4123, the chapter on workers' compensation. Appellant cites numer-

ous statutes to argue that in none of the sections is there a basis for Ohio Adm. Code 4121-7-14.

According to *Kildow, supra,* at 580, 192 N.E. at 876, reasonable rules promulgated by an administrative body under a valid grant from the legislature have the force and effect of law as long as the General Assembly has not preempted the field. Since R.C. Chapter 4123 does not preempt the field by explicitly defining payroll or wage expenditure, the commission's Ohio Adm. Code 4121-7-14(C), which defines "payroll," is valid if it is a reasonable definition.

Appellant argues that R.C. Chapter 4141, which deals with unemployment compensation, "emphasizes that wages are remuneration *paid* to an employee for the rendering of personal services."

However, R.C. 4141.01(H)(1) defines "remuneration" to include the cash value of all compensation in any medium other than in cash. In Ohio Adm. Code 4141-9-09, the Ohio Bureau of Employment Services requires that employers who provide meals and lodging to employees must include this value when computing the amount the employer must pay to the unemployment fund. Thus, the definition of wages used in calculating an employer's contribution to the unemployment compensation fund includes meals and lodging that an employer provides for its employees.

Appellant cites two cases in support of its contention that the value of lodging should not be included in payroll. Both cases refer to excluding various transportation, use, and upkeep of trucks and equipment of employees or independent contractors from wages in calculating the employer's contribution to the unemployment compensation fund in the trucking industry. *Commercial Motor Freight, Inc.* v. *Unemployment*

*Compensation Comm.* (1939), 28 Ohio Law Abs. 433, and *Commercial Motor Freight, Inc.* v. *Ebright* (1944), 143 Ohio St. 127, 137, 28 O.O. 56, 60, 54 N.E. 2d 297, 302.

Ohio Adm. Code 4121-7-14 is distinguishable in that it does not include remuneration for the use of employees' property in determining the payroll. Instead, payroll includes wages and the reasonable cash value of all compensation in any medium other than cash.

Appellant cites *State, ex rel. Bassman,* v. *Earhart* (1985), 18 Ohio St. 3d 182, 18 OBR 250, 480 N.E. 2d 761, in which county employees had their parking privileges taken away without suffering a reduction in wages, and *State, ex rel. Belknap,* v. *Lavelle* (1985), 18 Ohio St. 3d 180, 18 OBR 248, 480 N.E. 2d 758, where medical premiums were involved. Appellant argues that by logical extension the reasonable value of any meals or lodging provided by the Hiram House is a similar fringe benefit which should not be included in its payroll for calculating its workers' compensation premium.

However, parking privileges and medical benefits are not included in the definition of "payroll" promulgated in Ohio Adm. Code 4121-7-14. The court in *Earhart* found that parking privileges were a gratuity. Webster defines "gratuity" as "something given voluntarily or over and above what is due usually in return for or in anticipation of some service * * *." Webster's Third New International Dictionary (1961) 992. In *Lavelle,* the court found that the board of review was without jurisdiction to hear the case. It did not consider whether medical benefits should be included as wages.

While parking privileges and medical benefits are fringe benefits, they are of a different class than those enumerated in Ohio Adm. Code 4121-7-14, which relate very directly to fundamental living expenses such as housing and food.

Appellant also argues that the Ohio and federal tax laws provide guidance in determining the definition of payroll. Both the federal and Ohio tax codes find that lodging furnished to employees for the convenience of the employer is excluded from employees' gross income if the employee is required to accept such lodging as a condition of employment. Internal Revenue Code Chapter 119 and R.C. 5747.09.

However, "gross income" and "wage expenditures" are distinct terms. The rationale for Ohio Adm. Code 4121-7-14 is based primarily on the concept of employers' expenditures, whereas gross income for tax purposes is based on actual monetary gain by employees. The tax argument raised by Hiram House fails to take into consideration the employer emphasis of Ohio Adm. Code 4121-7-14. Therefore, appellant's argument is not persuasive.

Therefore, the Ohio Adm. Code 4121-7-14(C) definition of "payroll" is supported by the definition in the unemployment compensation area and not directly contradicted by definitions in other areas.

R.C. 4123.61 discusses how to compute workers' compensation benefits to injured employees. The statute states that benefits are based on the injured employee's average weekly wage unless there are *special circumstances* where this wage cannot justly be determined, in which event the commission can use a method which will result in substantial justice to the claimants.

Thus, R.C. 4123.61 allows the commission to include remunerations, including the reasonable value of employee lodging given by an employer,

in the calculation of a claimant's benefits based on his average weekly wage. The Industrial Commission, in its decision in the Hiram House case, stated that it includes housing given by an employer to an employee in the benefit calculation of the average weekly wage of an injured employee.

The workers' compensation fund is calculated to be a solvent state insurance fund. The Industrial Commission, which is in charge of the fund, has the duty to keep it solvent. To ensure solvency, premiums should be collected on the same basis as that used for claims paid. Therefore, the definition of "payroll" used to calculate premiums should include additional remunerations mentioned in Ohio Adm. Code 4121-7-14(C) to make sure than an employer pays in an amount relative to the exposure of the fund in the event that one of its employees is injured.

Moreover, the definition of "payroll" or "wage expenditures" promulgated by the Industrial Commission is reasonable because it is in accord with an ordinary definition which is the price paid for services and labor. That cost need not be paid only in cash but it also may include valuable benefits, such as lodging or food.

Therefore, the promulgation of Ohio Adm. Code 4121-7-14 is not an abuse of the Industrial Commission's discretion. It was proper for the Industrial Commission to assess Hiram House an additional amount for the reasonable value of lodging it provided to its four employees.

Appellant's first assignment of error is overruled.

Appellant secondly argues that the commission's promulgation of Ohio Adm. Code 4121-7-14 was an unconstitutional exercise of legislative powers. Appellant argues that the commission's rule is contrary to the policy previously declared by the General Assembly.

In *Carroll* v. *Dept. of Admin. Services* (1983), 10 Ohio App. 3d 108, 10 OBR 132, 460 N.E. 2d 704, this court found that "[t]he purpose of administrative rulemaking is to facilitate the administrative agency's placing into effect the policy declared by the General Assembly in the statutes to be administered by the agency. * * * By contrast, because it bears no reasonable relationship to the legislative purpose stated in the statute, the rule declares policy rather than dealing with administrative detail." *Id.* at 110, 10 OBR at 133-134, 460 N.E. 2d at 706.

As noted above, R.C. 4123.32 gives the commission the power to adopt rules with respect to the "collection, maintenance, and disbursements of the state insurance fund." The commission is charged with maintaining a solvent workers' compensation fund so that the disbursements do not exceed its collection. Ohio Adm. Code 4121-7-14 establishes a rule to ensure that the disbursements do not exceed the Industrial Commission's collection. Therefore, this rule has a reasonable relationship to the authority granted to the Industrial Commission in R.C. 4123.32. Furthermore, as previously discussed, the rule only sharpens the definition of "wage expenditures" or "payroll" in a manner that does not conflict with any statutes. Thus, the rule bears a reasonable relationship to the pertinent statutes. There was no unconstitutional delegation of legislative powers.

Appellant's second assignment of error is overruled.

Appellant's assignments of error are overruled, and the judgment of the trial court is affirmed.

*Judgment affirmed.*

YOUNG and COOK, JJ., concur.

COOK, J., of the Eleventh Appellate District, sitting by assignment in the Tenth Appellate District.