[Cite as *State ex rel. Matheny v. Indus. Comm.*, 2022-Ohio-1824.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State ex rel. Richard K. Matheny, | : | |
| Relator, | : | |
| v. | : | No. 19AP-871 |
| Industrial Commission of Ohio et al., | : | (REGULAR CALENDAR) |
| Respondents. | : | |

D E C I S I O N

Rendered on May 31, 2022

**On brief:** *Shapiro, Marnecheck & Palnik, Mathew Palnik,* and *Elizabeth Laporte,* for relator.

**On brief:** *Dave Yost,* Attorney General, and *John Smart,* for respondent Industrial Commission of Ohio.

IN MANDAMUS
ON OBJECTION TO THE MAGISTRATE'S DECISION

JAMISON, J.

{¶ 1} Relator, Richard K. Matheny, has filed this original action requesting this court issue a writ of mandamus ordering respondent, Industrial Commission of Ohio ("commission"), to vacate its order that denied his motion requesting that his average weekly wage ("AWW") be set at $1,545.10, and to enter an order adjusting all prior compensation.

**I. FACTS AND PROCEDURAL HISTORY**

{¶ 2} On April 20, 2018, relator requested that his AWW be adjusted to include his hourly compensation of $36.78, plus health and welfare benefits at a rate of $8.80 per hour, pension benefits at a rate of $10.05, National Electrical Benefit Fund pension benefits at a rate of $1.10 per hour, and National Electrical Industry Fund pension benefits at a rate of $.11 per hour. Relator requested his AWW be adjusted upward from $999.80 to $1,545.10.

{¶ 3} On May 30, 2018, a district hearing officer ("DHO"), denied relator's request finding that such benefits are not wages for the purposes of calculating AWW pursuant to R.C. 4123.61. Relator appealed this decision to a staff hearing officer ("SHO"), who held a hearing on July 5, 2018. Ultimately, on July 11, 2018, the SHO affirmed the DHO's order again finding that the additional benefits are not wages for purposes of calculating AWW. On August 1, 2018, the commission refused further appeal in the matter. On December 23, 2019, relator filed a complaint for writ of mandamus.

{¶ 4} This matter was referred to a magistrate pursuant to Civ.R. 53 and Loc.R. 13(M) of the Tenth District Court of Appeals. The magistrate issued the appended decision, including findings of fact and conclusions of law, and recommended this court deny relator's request for a writ of mandamus. The magistrate concluded that the commission did not abuse its discretion when it entered an order finding that the "additional benefits cited by claimant are not wages for purposes of calculating AWW pursuant to R.C. 4123.61 and, therefore, are not included in the calculation of the AWW; claimant's AWW shall remain at $999.80, which was set based on claimant's gross earnings in the year prior to the injury, divided by 52, per the AWW [Bureau of Workers' Compensation ("BWC")] calculation worksheet and claimant's wage records." (Appended Mag.'s Decision at ¶ 35.) Accordingly, the magistrate recommended that we deny the requested writ of mandamus. Relator timely filed an objection to the magistrate's decision.

## II. OBJECTION

{¶ 5} Relator filed the following objection to the magistrate's decision:

> The Magistrate erred by failing to address the legal question of whether the compensation paid to Relator pursuant to his Union Contract with Respondent-Employer are wages pursuant to R.C. 4123.56.

## III. DISCUSSION

{¶ 6} "Mandamus is an extraordinary writ that must be granted with caution." *State ex rel. Liberty Mills, Inc. v. Locker*, 22 Ohio St.3d 102, 103 (1986). To obtain a writ of mandamus, a relator must demonstrate: (1) that he or she has a clear legal right to the relief requested; (2) that the respondent has a clear legal duty to grant the relief requested; and (3) that he or she has no adequate remedy in the ordinary course of law. *State ex rel. Berger v. McMonagle*, 6 Ohio St.3d 28 (1983). "It is axiomatic that in mandamus, the legal duty

must be the creation of the legislative branch, and courts are not authorized to create the legal duty enforceable in mandamus." *State ex rel. Byrd v. Ross*, 10th Dist. No. 03AP-478, 2004-Ohio-2642, ¶ 14.  The right to mandamus must be shown by clear and convincing evidence, and a writ will not be granted in doubtful cases. *State ex rel. Goldsberry v. Weir*, 60 Ohio App.2d 149, 153 (10th Dist.1978). *State ex rel. NHVS Internatl., Inc. v. Ohio Bur. of Workers' Comp.*, 10th Dist. No. 13AP-356, 2014-Ohio-5522, ¶ 6.

{¶ 7}  Relator brings this action solely to determine whether his hourly health and welfare benefits and pension earnings are considered wages and therefore should be included in his AWW.  Relator's theory has been rejected.

{¶ 8}  Based upon Ohio Workers' Compensation law, benefits payable to claimants are calculated based upon AWW. R.C. 4123.61 states in pertinent part, "[t]he average weekly wage of an injured employee at the time of the injury or at the time disability due to the occupational disease begins is the basis upon which to compute benefits."  The "standard formula for establishing [AWW] is to divide claimant's wages for the year preceding injury by fifty-two weeks."  *State ex rel. Clark v. Indus. Comm.*, 69 Ohio St.3d 563, 565 (1994).  This court held that the AWW should "approximate the average amount that the claimant would have received had he continued working after the injury as he had before the injury." *State ex rel. Mattscheck v. Indus. Comm.*, 10th Dist. No. 12AP-255, 2013-Ohio-285, ¶ 7, citing *State ex rel. Erkard v. Indus. Comm.*, 55 Ohio App.3d 186 (10th Dist.1988).  The AWW "must do substantial justice to the claimant" and "should not provide a windfall."  *State ex rel. Valley Pontiac Co. v. Indus. Comm.*, 71 Ohio App.3d 388, 393 (10th Dist.1991).

{¶ 9}  The revised code does not define wages or earnings to be used in the calculation of AWW, but the Ohio Supreme Court has adopted the Webster's dictionary definition and "defines 'earnings' as 'wages * * * earned as compensation for labor' " and wages as "remuneration by an employer * * * for labor or services."  *State ex rel. McDulin v. Indus. Comm.,* 89 Ohio St.3d 390, 392 (2000).  "Income is a much broader term than 'earnings' or 'wages,' and cannot, therefore, be used interchangeably."  *Id.*  "[D]ividends, interest, and other forms of income unrelated to a claimant's job performance" are not to be used in the calculation of AWW.  *Id.*  This court defines wages as "monetary

remuneration by an employer for labor or services." *State ex rel. Cassese v. Ford Motor Co.,* 10th Dist. No. 05AP-165, 2005-Ohio-6752, ¶ 36.

{¶ 10} Relator's specific question is whether an employer's contributions to additional benefits should be calculated as wages and included in AWW. The United States Supreme Court delved into what we commonly refer to as fringe benefits in *Morrison-Knudsen Constr. Co. v. Dir., Office of Workers' Comp. Program,* 461 U.S. 624 (1983). In this case, the court held that an employer's contributions to a union trust fund for health and welfare, pensions, and employee training were not considered wages for the purposes of calculating weekly benefits under the District of Columbia's Workers' Compensation Act. In so deciding, the United States Supreme Court relied on the fact that the health and welfare, pension, and training funds could not be readily converted to a cash equivalent in the same way as regular wages or the reasonable value of lodging. The court also noted that the legislative history indicated that Congress did not intend to include these types of fringe benefits when calculating the rate of compensation benefits. This case is instructive in determining whether states should consider fringe benefits as income for the purpose of calculating AWW.

{¶ 11} The majority trend is to treat an employer's matching contribution to a pension plan as a welfare benefit that falls under the category of "fringe benefits," and thus is not included in the calculation of weekly benefits for workers' compensation purposes. 8 Arthur Larson, *Larson's Workers' Compensation Law* 93.01[2][b], at 93 (Rev.Ed.2015); *see also Lamar v. Koehn,* 968 P.2d 164, 167 (Colo.App.1998) (excluding an employer's contribution to an employee's pension plan from the calculation of weekly benefits); *Luce v. United Technologies Corp., Pratt & Whitney Aircraft Div.,* 247 Conn. 126 (1998) (finding that the calculation of "wages" under the state's workers' compensation laws does not include pensions); *Rainey v. Mills,* 733 S.W.2d 756, 758 (1987) (declining to find statutory support to include fringe benefits, such as employer pension plan contributions, in weekly wage calculation); *Barnett v. Sara Lee Corp.,* 627 A.2d 86, 90-91 (1993) (finding that pension plans could not be considered in the calculation of weekly wages for the purpose of determining a claimant's industrial loss of use); *In re Gagnon,* 965 A.2d 1154, 1159 (N.H.2009) (holding that weekly wages are calculated using a claimant's pre-tax pay and, therefore, it was not unjust for the collective bargaining agreement to exclude employer

payments to an employee's pension plan from the definition of wage); *Shaw v. U.S. Airways, Inc.*, 665 S.E.2d 449, 453 (N.C.2008) (holding that an employer's contributions to an employee's retirement account are not included in the calculation of a weekly wage for workers' compensation purposes); *Clopton v. Muskogee*, 147 P.3d 282, 284-85 (Okla.Civ.App.2006) (relying on *Morrison-Knudsen* in determining that pension plans are not included in the definition of wage for workers' compensation purposes); *Nelson v. SAIF Corp.*, 714 P.2d 631, 631-32 (Oregon 1986) (finding that pensions are not included in the definition of wages included in Oregon's workers' compensation laws). In the above cases, AWW has not included those benefits that are not direct compensation for labor.

{¶ 12} The commission has discretion to include the market value of fringe benefits in the calculation of AWW where special circumstances exist. R.C. 4123.61. The workers' compensation administrator, when special circumstances prevent the AWW from being justly determined, "shall use such method as will enable the administrator to do substantial justice to the claimants." R.C. 4123.61. This court rejected the inclusion of fringe benefits in AWW. In *Studer,* relator argued that fringe benefits, such as the market value of employer provided medical insurance, were special circumstances that should be included in his AWW, but the court held that the medical benefits were not ordinarily calculated in AWW. *State ex rel. Studer v. Indus. Comm.,* 10th Dist. No. 87AP-985 (Sept. 27, 1988).

{¶ 13} Relator further argues that the magistrate is silent as to this court's holding in *House v. Indus. Comm.*, 42 Ohio App.3d 29 (10th Dist.1987), which held that R.C. 4123.61 allows the commission to include remuneration types which are not specifically identified in the statute in its calculation of AWW. Relator argues that the holding in *House* requires this court to vacate the magistrate's decision and issue an opinion that would order BWC to include his performance-related pension contribution wages, as well as his health and wellness benefits, and set relator's AWW at $1,545.10. (Relator's Obj. to the Mag.'s Decision at 12.) I disagree.

{¶ 14} In *House*, the court was asked (1) whether the commission abused its discretion when it adopted former Ohio Adm.Code 4121-7-14 to include the value of lodging provided to employees for the purposes of calculating workers' compensation premiums, and (2) to define whether remuneration such as the reasonable value of lodging provided

to employees by their employer is wages. *House* is distinguishable from the present case. Relator's reliance on *House* and former Ohio Adm.Code 4121-7-14 is misplaced in this case because the former code specifically named lodging as a supplement to wages for the purposes of calculating AWW to establish workers' compensation premiums. Relator is seeking inclusion of benefits for the purposes of calculating AWW to establish workers' compensation benefits. Reliance on *House* leads relator down a road in a code section that is no longer applicable or a part of Ohio Adm.Code 4121-7-14.

**{¶ 15}** The commission has the discretion under R.C. 4123.61 to include additional employer provided benefits as wages in the calculation of AWW, but it is not required to include the benefits offered by relator. *State ex rel. Gunter v. Indus. Comm.,* 10th Dist. No. 15AP-562, 2017-Ohio-1571. Relator's request must be rejected as *Studer* held that the commission has discretion to find that fringe benefits such as medical insurance are not normally included in the calculation of AWW.

**{¶ 16}** The concurring opinion finds that the issue of determining what is included in AWW is settled. This forecloses the discretion of the commission. Defining AWW rests in the sole discretion of the commission and other forms of wages may be included in the future calculation at their discretion. In this case, the commission did not have a clear legal duty to include the benefits in the calculation of AWW, and relator's claims must fail. However, if the commission at some time in the future adopts this form of compensation in the calculation of wages, the commission has discretion to make that finding.

## IV. CONCLUSION

**{¶ 17}** On examination of the magistrate's decision, an independent review of the record pursuant to Civ.R. 53, and consideration of relator's objection, we find the magistrate has properly determined the facts and correctly applied the relevant law. Accordingly, we adopt the magistrate's decision as our own, as supplemented in the lead and separate concurring opinion, overrule relator's objection, and deny the requested a writ of mandamus.

*Objection overruled;*
*writ of mandamus denied.*

DORRIAN, J., concurs in judgment only.
BEATTY BLUNT, J., concurs in judgment only.

DORRIAN, J., concurring in judgment only.

{¶ 18} I concur with the lead opinion's resolution of the case, but respectfully write separately because I believe that applicable Ohio law resolves the issue in the present case.

{¶ 19} The issue in the present mandamus action is whether the commission abused its discretion by failing to include the value of relator's health and pension benefits in the average weekly wage ("AWW") calculation. "The average weekly wage of an injured employee at the time of injury * * * is the basis upon which to compute benefits." R.C. 4123.61. The standard formula for calculating the AWW "is to divide [relator's] earnings for the year preceding the injury by fifty-two weeks." *State ex rel. Clark v. Indus. Comm.*, 69 Ohio St.3d 563, 565 (1994).

{¶ 20} Relator contends the magistrate erred by refusing to adopt the definition of "remuneration" from R.C. 4141.01(H)(1) to define "wages" for the AWW calculation. Relator notes the legislature incorporated the R.C. 4141.01(H)(1) definition of remuneration into R.C. 4123.56. R.C. 4123.56, however, states that "[a]s used in this division, 'net take-home weekly wage' means the amount obtained by dividing an employee's total remuneration, as defined in [R.C.] 4141.01" by a certain denominator. R.C. 4123.56(A). An employee's "average weekly wage" differs from an employee's "net take-home weekly wage." *See* R.C. 4123.56(A). Neither R.C. 4123.56 nor 4123.61 define "wages" for purposes of the AWW calculation by reference to the definition of "remuneration" in R.C. 4141.01(H)(1). The magistrate properly determined the commission was not bound to use definitions from R.C. Chapter 4141, the chapter regulating unemployment compensation, to calculate the AWW.

{¶ 21} Although R.C. Chapter 4123 does not define what constitutes "wages" for the AWW calculation, in *State ex rel. McDulin v. Indus. Comm.*, 89 Ohio St.3d 390 (2000), the court defined " 'earnings' as 'wages * * * earned as compensation for labor,' " and "wages" as " 'monetary remuneration by an employer * * * for labor or services.' " *Id.* at 392, quoting *Webster's Third New International Dictionary* 714, 2568 (1986). The claimant in *McDulin* asserted that the commission abused its discretion by refusing to include reimbursement payments the claimant received for lodging, meals, and tool and trucking expenses, which the claimant's employer reported as "miscellaneous income" on federal tax form 1099, in the claimant's AWW. *Id.* at 392. The court concluded the commission had not abused its

discretion, as there was "nothing in [R.C. 4123.61 that] demand[ed] or authorize[d]" inclusion of the reimbursement payments in the AWW calculation. *Id.* The court noted that R.C. 4123.61 "explicitly refer[ed] to average weekly *wage*, not average weekly *income*," and thus held that "income" could not be substituted for the term "wage" in the statute. (Emphasis sic.) *Id.* Although the court acknowledged that "in some situations, lodging, meals, etc. [could] be part of the wage package," the claimant in *McDulin* failed to establish that the reimbursement payments were "gainful remuneration rather than simple reimbursement for expenses incurred by claimant." *Id.* at 392.

{¶ 22} Since *McDulin*, this court has defined "wages" for purposes of the AWW calculation as "monetary remuneration by an employer for labor or services." *State ex rel. Cassese v. Ford Motor Co.*, 10th Dist. No. 05AP-165, 2005-Ohio-6752, ¶ 30. *Accord State ex rel. Hord v. Combs*, 10th Dist. No. 04AP-617, 2005-Ohio-1532, ¶ 14 (stating that "the use of the word 'wage' in R.C. 4123.61 constitutes monetary remuneration by an employer for labor or services"); *State ex rel. Yester v. Indus. Comm.*, 10th Dist. No. 06AP-866, 2007-Ohio-2525, ¶ 5 (same). *See also State ex rel. Warner v. Indus. Comm.*, 131 Ohio St.3d 366, 2012-Ohio-1084, ¶ 16 (observing that whether income is "federally taxable income" is "irrelevant in determining what to include in the AWW wage total").

{¶ 23} Relator contends that, pursuant to *McDulin*, the value of his fringe benefits should be included in the AWW calculation because the amount his employer contributes to the benefits is based on each hour worked by relator. In *McDulin*, the court cautioned against including all forms of "income" in the AWW calculation, because doing so "would permit the inclusion into the AWW calculation of dividends, interest, and other forms of income unrelated to claimant's job performance," which was "clearly not what the General Assembly had in mind." *Id.* at 392. Thus, while *McDulin* explained that income wholly unrelated to job performance should not be included in the AWW calculation, *McDulin* does not appear to hold, as relator appears to contend, that every employment benefit measured by hour worked would qualify as "wages" for purposes of AWW.

{¶ 24} Moreover, in *State ex rel. Studer v. Indus. Comm.*, 10th Dist. No. 87AP-985 (Sept. 27, 1988), this court specifically addressed whether an employer's contributions to an employee's health benefits should be included in the claimant's wages for purposes of the AWW calculation. We held that the "market value of medical insurance supplied by the

employer are not benefits that are ordinarily calculated to be added to the average weekly wage of an employee * * * by R.C. 4123.61." *Id.* In *Studer* we stated that, if health benefits were to be included in the AWW calculation, "it should be by legislative enactment stating a definition of weekly wage that would include this type of benefit." *Id.*

{¶ 25} Since its original enactment in 1959, R.C. 4123.61 was amended, without substantive change, in 1993 and 2006. Thus, following this court's decision in *Studer* and the Supreme Court of Ohio's decision in *McDulin*, the General Assembly re-enacted R.C. 4123.61 without providing a more comprehensive definition for the term "wage" in the statute.

{¶ 26} The lead opinion notes several federal and out-of-state cases which address whether fringe benefits may be included in the AWW calculation. However, as these cases do not address R.C. 4123.61, I would not find them relevant to the resolution of the present issue. The statute applicable in each jurisdiction will necessarily determine what constitutes "wages" under that jurisdiction's AWW calculation.[1]

{¶ 27} There is nothing in R.C. 4123.61 which would require the commission to include employer contributions to fringe benefits in the AWW calculation. As such, relator cannot establish that the commission had a clear legal duty to include the value of his health

---

[1] For instances, in *Morrison-Knudsen Constr. Co. v. Dir., Office of Workers' Comp. Programs*, 461 U.S. 624, 637 (1983), the United States Supreme Court addressed whether employer contributions to union trust funds for health and pension benefits constituted "wages" under the Longshoremen's and Harbor Workers' Compensation Act. The relevant provision of the Act defined "wages" as " 'the money rate at which the service rendered is recompensed under the contract of hiring in force at the time of the injury, including the reasonable value of board, rent, housing, lodging, or similar advantage received from the employer.' " *Id.* at 629, quoting (prior version) 33 U.S.C. 902(13). The court concluded that employer contributions to fringe benefits were not "wages," as the benefits were not "similar advantage[s]" to board, rent, housing or lodging. *Id.* at 630. Notably, in 1984, Congress amended the definition of "wages" in the Act to specifically exclude "fringe benefits, including (but not limited to) employer payments for or contributions to a retirement, pension, health and welfare," from the definition of "wages" in the Act. 33 U.S.C. 902(13). *See Universal Maritime Serv. Corp. v. Wright*, 155 F.3d 311, 319, 321-23 (4th Cir.1998).

In *Lamar v. Koehn*, 968 P.2d 164 (Colo.App.1998), the applicable statute defined "wages" under Colorado's Workers' Compensation Act as including "board, rent, housing and lodging, specifically added gratuities, and certain costs of continuing or converting health insurance," but as excluding " 'any similar advantage or fringe benefit not specifically enumerated.' " *Id.* at 166, quoting Colo. Sess. Laws 1989 ch. 67, 8-47-101(2) at 411. *See* Colo.Rev.Stat. 8-4-201(19)(b). As such, the court in *Lamar* concluded that employer contributions to the claimant's pension benefits could not be included in the AWW calculation. *Compare McCarty's Case*, 445 Mass. 361, 368, 363 (Mass.2005), quoting Massachusetts General Laws c. 149 Section 26 (holding that "the inclusion of fringe benefits in the determination of average weekly wages for a unionized employee * * * [was] required under the plain language" of the applicable statute, which provided that payments " 'by employers to health and welfare plans, pension plans and supplementary unemployment benefit plans under collective bargaining agreements or understandings between organized labor and employers *shall be included*' " in Massachusetts' AWW calculation (Emphasis sic.)).

and pension benefits in his AWW. *See State ex rel. Pipoly v. State Teachers Retirement Sys.*, 95 Ohio St.3d 327, 2002-Ohio-2219, ¶ 18, citing *State ex rel. Woods v. Oak Hill Community Med. Ctr., Inc.*, 91 Ohio St.3d 459, 461 (2001) (providing that in mandamus proceedings "the creation of the legal duty that a relator seeks to enforce is the distinct function of the *legislative branch of government*, and courts are not authorized to create the legal duty enforceable in mandamus" (Emphasis sic.)). If employer contributions to fringe benefits are to be included in the AWW calculation, the General Assembly should define the term "wage" in R.C. 4123.61 to specifically include such benefits.

{¶ 28} Finally, I address the lead opinion's discussion of *House v. Indus. Comm.*, 42 Ohio App.3d 29 (10th Dist.1987). In *House*, this court concluded that the commission did not abuse its discretion by promulgating former Ohio Adm.Code 4121-7-14(C), which provided that "the 'reasonable value of board, lodging, house or room rent' allowed by an employer to its employees shall be included in the employer's payroll for purposes of calculating the employer's rate of contribution to the State Insurance Fund." *House* at syllabus. Based on former Ohio Adm.Code 4121-7-14(C), we determined the commission had properly increased an employer's workers' compensation premium based on the reasonable value of employer provided lodging. The commission explained in the case that "it include[d] housing given by an employer to an employee in the benefit calculation of the average weekly wage of an injured employee," and we found that R.C. 4123.61 "allow[ed] the commission to include * * * the reasonable value of employee lodging given by an employer" in the AWW. *Id.* at 33-34. We noted that the commission's representation regarding including employer provided lodging in the AWW calculation supported the rule in former Ohio Adm.Code 4121-7-14(C), as workers' compensation "premiums should be collected on the same basis as that used for claims paid." *Id.* at 34.

{¶ 29} The lead opinion states *House* "held that R.C. 4123.61 allows the commission to include remuneration types which are not specifically identified in the statute in its calculation of AWW." (Lead Opinion at ¶ 13.) However, R.C. 4123.61 does not address workers' compensation premiums; R.C. 4123.61 addresses solely the AWW. Moreover, the present case does not present an issue regarding workers' compensation premiums. The lead opinion also states that *House* is distinguishable from the present case and reliance on *House* and former Ohio Adm.Code 4121-7-14 is misplaced "because the former code

specifically named lodging as a supplement to wages for the purposes of calculating AWW to establish workers' compensation premiums." (Lead Opinion at ¶ 14.) However, there is no statute or code provision which identifies what comprises "wages" for purposes of the AWW calculation. I agree that *House* is distinguishable from the present case, but find so because the case primarily concerned the calculation of workers' compensation premiums, not the AWW.

{¶ 30} Based on the foregoing, I concur with the lead opinion's decision to overrule relator's objection, adopt the magistrate's decision, and deny the requested writ of mandamus, but for the reasons stated in this opinion.

_____

# **A P P E N D I X**

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State ex rel. Richard K. Matheny, | : | |
| Relator, | : | |
| v. | : | No. 19AP-871 |
| Industrial Commission of Ohio et al., | : | (REGULAR CALENDAR) |
| Respondents. | : | |

## M A G I S T R A T E ' S   D E C I S I O N

Rendered on April 28, 2021

*Shapiro, Marnecheck & Palnik, Mathew Palnik,* and *Elizabeth Laporte,* for relator.

*Dave Yost,* Attorney General, and *John Smart,* for respondent Industrial Commission of Ohio.

IN MANDAMUS

{¶ 31} Relator, Richard K. Matheny ("claimant"), has filed this original action requesting this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order that denied his motion requesting that his average weekly wage ("AWW") be set at $1,545.10, and to enter an order adjusting all prior compensation.

Findings of Fact:

{¶ 32} 1. Claimant sustained a work-related injury on July 28, 2014, through his employment with Contemporary Electric, Inc. ("employer"), respondent, and his workers' compensation claim was allowed for the following conditions: sprain of the right knee,

substantial aggravation of pre-existing tricompartmental degenerative joint disease of the right knee, and substantial aggravation of pre-existing chondromalacia of the right knee.

{¶ 33} 2. On September 18, 2014, the Ohio Bureau of Workers' Compensation ("BWC") issued an order setting claimant's AWW at $999.80, based upon an hourly rate of $36.78 per hour.

{¶ 34} 3. On April 20, 2018, claimant filed a motion requesting his AWW be set at $1,545.10, and that all prior compensation be adjusted. Claimant asserted that his "total remuneration," as that term is used in R.C. 4123.56, should include his health and welfare benefits ($8.80/hour); pension benefits ($10.05/hour); National Electrical Benefit Fund ("NEBF") pension benefits (3% of gross income, or $1.10/hour), and National Electrical Industry Fund ("NEIF") pension benefits (3% of gross income, or $.11/hour). Thus, claimant claimed that his total remuneration from his employer was $56.84/hour, and his AWW should be set at $1,545.10.

{¶ 35} 4. On May 24, 2018, a district hearing officer ("DHO") held a hearing on claimant's motion. At the hearing, claimant modified the AWW amount he was claiming to $1,527.43. On May 30, 2018, the DHO issued a decision in which she denied the motion, finding the following: the additional benefits cited by claimant are not wages for purposes of calculating AWW pursuant to R.C. 4123.61 and, therefore, are not included in the calculation of the AWW; claimant's AWW shall remain at $999.80, which was set based on claimant's gross earnings in the year prior to the injury, divided by 52, per the AWW BWC calculation worksheet and claimant's wage records. Claimant appealed the decision.

{¶ 36} 5. On July 5, 2018, a staff hearing officer ("SHO"), held a hearing on claimant's appeal. On July 11, 2018, the SHO issued a decision in which he affirmed the DHO's order, finding the following: the additional benefits cited by claimant are not wages for purposes of calculating AWW, as set forth in R.C. 4123.61 and, therefore, are not permitted to be included in the calculation of claimant's AWW. Claimant appealed.

{¶ 37} 6. On August 1, 2018, the commission refused further appeal of the matter.

{¶ 38} 7. On December 23, 2019, claimant filed a complaint for writ of mandamus.

Conclusions of Law and Discussion:

{¶ 39} For the reasons that follow, it is this magistrate's decision that this court should deny claimant's request for a writ of mandamus.

{¶ 40} In order for this court to issue a writ of mandamus, a relator must establish the following three requirements: (1) that relator has a clear legal right to the relief sought; (2) that respondent has a clear legal duty to provide such relief; and (3) that relator has no adequate remedy in the ordinary course of the law. *State ex rel. Pressley v. Indus. Comm.*, 11 Ohio St.2d 141 (1967).

{¶ 41} A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order that is not supported by any evidence in the record. *State ex rel. Elliott v. Indus. Comm.*, 26 Ohio St.3d 76 (1986). On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. *State ex rel. Lewis v. Diamond Foundry Co.*, 29 Ohio St.3d 56 (1987). Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder. *State ex rel. Teece v. Indus. Comm.*, 68 Ohio St.2d 165 (1981).

{¶ 42} Pursuant to Ohio workers' compensation law, benefits payable to claimants are calculated based upon a figure known as the AWW. R.C. 4123.61 provides, in pertinent part, "[t]he average weekly wage of an injured employee at the time of the injury or at the time disability due to the occupational disease begins is the basis upon which to compute benefits." The AWW should "approximate the average amount that the claimant would have received had he continued working after the injury as he had before the injury." *State ex rel. Mattscheck v. Indus. Comm.*, 10th Dist. No. 12AP-255, 2013-Ohio-285, ¶ 7, citing *State ex rel. Erkard v. Indus. Comm.*, 55 Ohio App.3d 186 (10th Dist.1988). AWW is generally calculated by dividing the injured worker's wages for the year preceding the date of injury by 52 weeks. *State ex rel. Clark v. Indus. Comm.*, 69 Ohio St.3d 563, 565 (1994). However, R.C. 4123.61 provides that "[i]n cases where there are special circumstances under which the [AWW] cannot justly be determined by applying this section, the administrator of workers' compensation, in determining the [AWW] in such cases, shall use such method as will enable the administrator to do substantial justice to the claimants." The AWW must do the claimant "substantial justice" without providing a windfall. *State ex rel. FedEx Ground Package Sys. v. Indus. Comm.*, 126 Ohio St.3d 37,

2010-Ohio-2451, ¶ 7, citing *State ex rel. Logan v. Indus. Comm.*, 72 Ohio St.3d 599, 600 (1995). The "special circumstances" provision in R.C. 4123.61 has "generally been confined to uncommon situations." *State ex rel. Wireman v. Indus. Comm.*, 49 Ohio St.3d 286, 288 (1990). Thus, R.C. 4123.61 provides a standard AWW computation that is to be used in all but the most exceptional cases. *State ex rel. Gollihue v. Bur. of Workers' Comp.*, 10th Dist. No. 05AP-924, 2006-Ohio-3910, ¶ 45, citing *State ex rel. Cawthorn v. Indus. Comm.*, 78 Ohio St.3d 112, 114 (1997).

{¶ 43} In the present case, claimant argues that his compensation was $56.84 per hour, but the BWC calculated his AWW based upon his hourly rate of $36.78 per hour. Claimant cites Ohio BWC Policy #CP-23-01(IV)(C) for the proposition that, in calculating wages, the BWC shall include gross regular earnings, before deductions such as deferred compensation, and payment received in lieu of receiving health insurance. Claimant also cites R.C. 4141.01(H)(1), which defines "remuneration" as "all compensation for personal services, including commissions and bonuses and the cash value of all compensation in any medium other than cash." Furthermore, claimant asserts that R.C. 4141.01(H)(1) explicitly states that payments and benefits cited in 26 U.S.C. 3306(b)(2) to (20) are excluded from the definition of "remuneration," and none of the claimed benefits here fall within those exclusions.

{¶ 44} Claimant makes specific arguments with regard to each type of benefit he claims should be included in his total remuneration. With regard to his pension contribution earnings, claimant asserts his hourly pension contributions should be included in his AWW, pursuant to R.C. 4141.01(H)(1), as they are a set hourly amount that he earns per hour worked, which is then paid into his pension fund. With regard to his health and welfare earnings, claimant contends that his compensation includes hourly health and welfare benefits that are paid into the union Health Reimbursement Arrangement, which is used to reimburse union employees for out-of-pocket medical expenses and personal health insurance premiums. Claimant argues that reimbursement arrangements are flexible spending accounts not specifically excluded from the definition of remuneration in 26 U.S.C. 3306(b), and R.C. 4141.01(H) does not exclude flexible spending arrangements from the definition of remuneration. Finally, claimant contends his AWW should include all of his performance-related wages, as he earns both his

pension benefits and health and welfare benefits for each hour worked, and they are tied to his job performance, which is consistent with the Supreme Court of Ohio's holding in *State ex rel. McDulin v. Indus. Comm.*, 89 Ohio St.3d 390 (2000), that AWW includes income tied to job performance.

{¶ 45} Claimant's arguments can be broken down into three general contentions: (1) the commission should have followed Ohio BWC Policy #CP-23-01(IV)(C); (2) the commission should have followed R.C. 4141.01(H)(1); and (3) the commission should have followed *McDulin*. However, none of these contentions are persuasive. With regard to Ohio BWC Policy #CP-23-01(IV)(C), that provision provides:

> C. BWC shall include the following earnings in the calculation of wages, however the list is not all-inclusive:
>
> 1. Gross regular earnings, before deductions such as deferred compensation, Cafe 125, etc.;
>
> 2. Tips;
>
> 3. Self-employment earnings (e.g., Form 1040 Schedule C);
>
> 4. Allowances;
>
> 5. Bonuses related to direct and active participation in employment during the earnings period (e.g., performance bonus);
>
> 6. Profit sharing related to work activity (e.g., earned based on hours worked, product produced or other earnings related to work activity);
>
> 7. Working wage loss or living maintenance wage loss paid in a prior workers' compensation claim (in addition to earnings from an employer);
>
> 8. Per diem or stipend payments;
>
> 9. Vacation, sick leave, and holiday pay for periods which fall within the earnings period;
>
> 10. Lump sum payouts for vacation, sick, personal or other leave is included for AWW calculation only;
>
> 11. Farm income (e.g., Form 1040 Schedule F);

12. Earnings reported on the injured worker's federal income tax return that are specifically subject to either social security withholding, Medicare withholding, or self-employment tax (e.g., housing allowance);

13. Income specifically subject to self-employment tax (Schedule SE);

14. Payment received in lieu of receiving health insurance.

{¶ 46} Although Ohio BWC Policy #CP-23-01(IV)(C) sets forth a detailed list of what earnings the "BWC shall include" in the calculation of wages, the issue before this court in mandamus is not whether the Ohio BWC policy contains a better or more comprehensive definition of wages than the definition used by the commission. Instead, the standard of review in mandamus cases is whether the respondent has a clear legal duty to provide the relief relator seeks. To do so, the relator must show the commission abused its discretion by entering an order not supported by some evidence in the record. Claimant cannot sustain such a burden here. The commission is not bound by the BWC's policies or guidelines. *State ex rel. Honda of Am. Mfg., Inc. v. Indus. Comm.*, 10th Dist. No. 12AP-268, 2013-Ohio-286, ¶ 4, citing *State ex rel. Sugardale Foods, Inc. v. Indus. Comm.*, 90 Ohio St.3d 383 (2000) (the commission is not bound by the BWC's policy; the question then becomes whether there is some evidence upon which the commission could rely to reach its conclusion); *State ex rel. Richards v. Indus. Comm.*, 110 Ohio App.3d 109, 111-12 (10th Dist.1996) (finding that the BWC's internal guidelines for computation of wage loss serve as an advisory function only; they do not have the force of law and do not serve as binding or precedential authority for the court); *State ex rel. Fairfield City Schools v. Indus. Comm.*, 10th Dist. No. 09AP-271, 2010-Ohio-871, ¶ 10 (the commission is not bound to follow BWC internal guidelines; a state agency is not obligated to follow the internal guidelines of another). "The commission is the adjudicatory arm of Ohio's Workers' Compensation system." *Honda of Am. Mfg.* at ¶ 7. " 'The bureau gives way to the commission when a party contests an award, necessitating a weighing of evidence and a judgment. The bureau then makes the payments based upon the commission's judgments.' " *Id.*, quoting *State ex rel. Crabtree v. Ohio Bur. of Workers' Comp.*, 71 Ohio St.3d 504, 507 (1994). The BWC's duty under R.C. 4121.39(C) is to make payment on

orders of the commission. *Id.*, quoting *Crabtree*. Thus, the BWC is obligated to follow the commission's orders, even if they are contrary to the BWC policies or guidelines. *Id.*

{¶ 47} Accordingly, here, the commission did not have a clear legal duty to provide the relief claimant seeks. The BWC set claimant's AWW at $999.80 using his pay history and other employment evidence documenting his prior 52 weeks of gross hourly wages, excluding from the calculation claimant's unemployment during that period. This is the standard formula for AWW provided in R.C. 4123.61. *See McDulin*, citing *State ex rel. Clark v. Indus. Comm.*, 69 Ohio St.3d 563, 565 (1994) (the standard formula for establishing the AWW is to divide the claimant's earnings for the year preceding injury by 52 weeks). The use of the $999.80 figure is substantially justifiable, as it is the average amount of income claimant would have received had he continued working after the injury. *See Mattscheck, supra*, citing *Erkard* ("The AWW should approximate the average amount that the claimant would have received had he continued working after the injury as he had before the injury."). Although there might have been other benefits yielded if claimant had been working during his time of injury, the commission was within its discretion not to include those as claimant's wages, as they were not monies claimant would have actually received had he continued working. The commission could have justly determined that to include such monies would not have accurately reflected his lost wages and resulted in a windfall for claimant. *See, e.g., State ex rel. Gunter v. Indus. Comm.*, 10th Dist. No. 15AP-562, 2017-Ohio-1571, ¶ 18, citing *State ex rel. Zingales v. Indus. Comm.*, 10th Dist. No. 08AP-643, 2009-Ohio-1860, citing *McDulin* (the calculation of AWW should be based on a claimant's net income following deductions from gross income; to do otherwise would result in a windfall for the claimant). Therefore, the commission did not abuse its discretion when it did not utilize Ohio BWC Policy #CP-23-01(IV)(C).

{¶ 48} The commission was also not bound by the definition of "remuneration" provided in R.C. 4141.01(H)(1) in determining what constituted claimant's AWW. R.C. 4141.01(H)(1) is found in the chapter of the Ohio Revised Code regulating unemployment compensation, and does not concern workers' compensation. Claimant can cite no authority, and the magistrate can find none, to support the commission's use of R.C. 4141.01(H)(1) and its definition of "remuneration" to determine the wages used

for calculating AWW. Furthermore, R.C. 4141.01, entitled "Definitions," explicitly limits its application to those words "[a]s used in this chapter." Again, as similarly discussed above with regard to Ohio BWC Policy #CP-23-01(IV)(C), the issue before this court in mandamus is not whether R.C. 4141.01 provides a better or more comprehensive definition for wages than that used by the commission for calculating AWW, but, rather, whether the commission had a clear legal duty to provide the requested relief based upon the definition provided in R.C. 4141.01(H)(1). However, claimant has failed to show any clear duty to provide claimant relief in his workers' compensation case based upon the definition contained in Chapter R.C. 4141.01, which pertains solely to unemployment compensation.

{¶ 49} With regard to claimant's reliance upon *McDulin*, the case has already been cited above to support the conclusion that the commission did not abuse its discretion in determining claimant's AWW. Claimant argues that *McDulin* held that monies tied to job performance must be included in calculating AWW; thus, because his pension benefits and health and welfare benefits are tied to his job performance, they should be included in his AWW. However, *McDulin* does not demand a different outcome in this case. In *McDulin*, the BWC set the claimant's AWW at $391.11 by dividing his reported wages for the prior year by 52 weeks worked. Claimant received other monies that were reimbursement for truck and tools, etc., and the BWC did not include these in his wages for purposes of AWW. An SHO found the AWW to be $400.00 based on testimony and evidence that claimant was being paid $10.00 per hour and normally worked a 40-hour week, but the SHO did not include the expense reimbursements (per diem for lodging and meal expenses, and expenses for the use of claimant's truck and tools), finding they were not includable in claimant's wages for purposes of calculating AWW. On appeal of the appellate court's decision affirming the commission, the Supreme Court found that the standard formula for establishing AWW is to divide claimant's earnings for the year preceding injury by 52 weeks. In rejecting claimant's attempt to substitute the term "income" for the terms "wages" and "earnings" in order to include his "miscellaneous income" (reimbursement for lodging, meals, and tool and trucking expenses), the court held that "income" is not synonymous with "earnings" or "wages." The court found that "earnings" are wages earned as compensation for labor, and "wages" are monetary

remuneration by an employer for labor or services. "Income," the court explained, represents a gain or recurrent benefit that is measured in money and for a given period of time, derives from capital, labor, or a combination of both. The court concluded that "income" is a much broader term than "earnings" or "wages," and cannot, therefore, be used interchangeably. The court pointed out the distinction was important because it transforms claimant's proposal into an improper request that the court read into a statute words that are not contained therein. The court also rejected claimant's citation to other Ohio Revised Code and Ohio Administrative Code sections, finding they were inapplicable because most of them applied to unemployment compensation and not workers' compensation and referred more broadly to the concept of income. The court also noted that the AWW calculation does not include forms of income unrelated to claimant's job performance, although lodging, meals, etc., could be part of the wage package in certain situations where the monies are gainful remuneration.

{¶ 50} Initially, although the court in *McDulin* did not explicitly indicate that definitions from the unemployment compensation statutes are never applicable to workers' compensation cases, the court clearly implied that their applicability is questionable, given the broader definition of income used in the unemployment compensation statutes. The magistrate is disinclined to borrow definitions from unemployment compensation law and use them for purposes of workers' compensation determinations when the Supreme Court was unwilling to do so. Furthermore, although the Supreme Court intimated that the AWW calculation may include forms of income related to a claimant's job performance, there is no support in *McDulin* that the type of pension benefits and health and welfare benefits at issue in the present case are so tied to his job performance that they should be considered the type of gainful remuneration described in *McDulin.* In the end, the crux of the current matter is that the holding in *McDulin* does not implicate the clear legal duty urged by claimant that the commission is required to include his pension benefits and health and welfare benefits in his AWW.

{¶ 51} Accordingly, for the above reasons, it is the magistrate's recommendation that this court should deny claimant's complaint for writ of mandamus.

/S/ MAGISTRATE
THOMAS W. SCHOLL III

**NOTICE TO THE PARTIES**

Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b).